Rockingham
No. 84-095

# The State of New Hampshire

v.

# Bernard Richard Pinder

March 7, 1985

*Gregory H. Smith*, attorney general (*Robert B. Muh*, attorney, on the brief and orally), for the State.

*Burns, Bryant, Hinchey, Cox & Shea P.A.*, of Dover (*Anthony A. McManus* on the brief and orally), for the defendant.

KING, C.J.   The defendant, Bernard Richard Pinder, was convicted of possession of a controlled drug in violation of RSA 318-B:2, following a trial in superior court. The defendant appealed on the grounds that the trial court erred in denying the defendant's motions to suppress items taken during a consent search of the defendant's property and to suppress statements made by the defendant during and after the search. Because we conclude that the defendant consented only to a search of his house and did not authorize a search of outbuildings on his property, we hold that the trial judge erred in failing to suppress items taken during the search and statements made as a consequence of the search. Accordingly, we reverse.

On August 27, 1983, State Police Sergeant Henry Carpenito obtained an arrest warrant for the defendant on charges stemming from the discovery by police of marijuana growing on land owned by the defendant in Ossipee. On the following morning, Carpenito and State Police Corporal Arthur Wiggin went to the defendant's residence in Newton for the purpose of getting a description of the defendant's residence in order to apply for a search warrant. Upon their arrival, they saw the defendant in front of his house. They then arrested him and advised him of his *Miranda* rights.

Following his arrest, the defendant agreed to sign a standard consent search form. The form stated that the defendant had been informed of his constitutional right not to have a search made of "the premises" and that he authorized the police officers to conduct a "complete search" of his "residence" and to take from the "residence" "letters, papers, materials or other property."

At the suppression hearing, Officer Carpenito testified that he told the defendant that the officers would make "an unlimited

search of the entire premises." According to Officer Wiggin, Officer Carpenito told the defendant that "the barns and the residence" would be searched, although he could not recall the exact words. Officer Carpenito, however, testified during cross-examination that, in explaining to the defendant the physical scope of the search authorized by the consent search form, Carpenito did not specifically refer to a search of the defendant's barns and shed. Instead, he told the defendant that the "entire property" would be searched and "there wouldn't be any limitations placed on [the police]."

The defendant testified that he signed the consent form with the understanding that he was consenting to a search of his house only. He testified that his education ended in the sixth grade and that he was incapable of reading the consent form. He further stated that, at the time he signed the consent form, he told Officer Carpenito, "You can search the house. I got nothing to hide."

Prior to the commencement of the search of his property, the defendant spoke by telephone with his lawyer, Ronald Chisholm, who testified that he advised the defendant not to make any statements or answer any questions by the police. The defendant told his attorney that he had signed the consent search form. He subsequently reaffirmed his consent to a search.

The police searched the defendant's house, two barns and a shed. The smaller of the barns was padlocked. The defendant told the police that he did not have a key to the smaller barn and that he rented the barn to another person. On further questioning, he said that it previously had been rented, but was not being rented at that time.

The police and the defendant agree that the defendant never specifically told police not to search the smaller, locked barn. Significantly, the record nowhere indicates that the defendant specifically authorized a search of the locked barn.

The police gained entry to the smaller barn by forcibly removing the lock and latch to the barn door. Inside the barn, they found three to four pounds of marijuana and related paraphernalia, such as scales and bale wrappers.

The defendant was present when the marijuana was discovered. Officer Carpenito testified that, upon discovery of the marijuana, the defendant stated without prompting from the police: "It was mine." The defendant denied making this statement. He testified that, in response to a question by Officer Wiggin, "I suppose this is yours?," he replied, "You already told me all the stuff you are finding here is mine." Officer Carpenito testified that the defendant repeated his incriminating statement while being questioned en route to jail.

The defendant moved to suppress the evidence seized during the search and also moved to suppress statements made during and after the search. The Superior Court (*Dalianis*, J.) denied both motions, finding that the consent to search the property was voluntarily given and was not revoked and that the defendant's statement had met the voluntary waiver standard set out in *State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 556 (1978).

On appeal, the defendant first argues that the search violated his rights under the fourth amendment of the Federal Constitution and part I, article 19 of the State Constitution because his consent to the search was not voluntary, and that the physical scope of the search exceeded the authorization of the consent. Second, the defendant contends that, because he did not waive his right to counsel and his right against self-incrimination, his statements should have been suppressed.

To justify a warrantless search on a theory of consent, the State must demonstrate that the consent was free, knowing and voluntary. *State v. McGann*, 124 N.H. 101, 105, 467 A.2d 571, 574 (1983); *State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 498 (1979); *State v. Laro*, 106 N.H. 500, 503, 213 A.2d 909, 911 (1965); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27 (1973). The State must meet its burden of proof on the issue of the existence of voluntary consent by a preponderance of the evidence. *State v. McGann supra*. Voluntary consent is a question of fact that the trial court must determine from the totality of the circumstances. *McGann*, 124 N.H. at 105–06, 467 A.2d at 574; *State v. Radziewicz*, 122 N.H. 205, 211, 443 A.2d 142, 146 (1982).

In reviewing a trial court's finding of voluntary consent, we will not overturn the finding unless it is without support in the record. *State v. McGann, supra* at 106, 467 A.2d at 574; *State v. Radziewicz supra; see State v. Laro, supra* at 503, 213 A.2d at 912 (finding by lower court that defendant freely consented to search of car trunk amply supported by the evidence).

The record in the instant case supports a finding that voluntary consent was given for a search of the defendant's house. The defendant admittedly authorized a search of his house. The consent form which he signed and which was explained to him by the police refers to a search of "the premises" and twice uses the term "residence." The defendant maintained at the suppression hearing that he understood that, in signing the consent form, he was authorizing a search of his house, rather than of a wider area of his property. Also, after speaking with his attorney, he reaffirmed his consent to

the police. In sum, ample evidence supports the finding that the defendant's consent was voluntary.

Having upheld the trial court's finding that the defendant voluntarily consented to a search, we must next determine whether the trial court erred in failing to find that the physical scope of the search exceeded the defendant's authorization.

■ "When the police are relying upon consent as a basis for their warrantless search, they have no more authority than they have been given by the consent." 2 W. LAFAVE, SEARCH AND SEIZURE § 8.1(c), at 624 (1978); *United States v. Rackley*, 742 F.2d 1266, 1270–71 (11th Cir. 1984). The question of the scope of consent may be stated as "how far the defendant intended the consent to extend or how the police reasonably construed his consent." 2 W. LAFAVE, *supra* at 625. In *State v. Billups*, 118 Ariz. 124, 575 P.2d 323 (1978), the Arizona Supreme Court held that a consent to a search of a house did not authorize a search of a shed behind the house. *But see Commonwealth v. Eckert*, 368 A.2d 794 (Pa. Super. 1976) (written consent to search "premises" extends to nearby shed).

■ Moreover, submission to a search does not constitute consent. *State v. Laro, supra* at 503, 213 A.2d at 912; *Raleigh v. State*, 365 So.2d 1048, 1049 (Fla. Dist. Ct. App. 1978). In establishing what area a defendant has authorized to be searched, we must look to the authorization itself. For example, in determining whether the defendant had consented to a search of a car trunk, the United States Court of Appeals for the Ninth Circuit concluded that a statement by the defendant, who claimed not to have the trunk key, that "I would [open the trunk] but I can't" is not the equivalent of "yes, you may open it if you can," and does not amount to consent. *United States v. Patacchia*, 602 F.2d 218, 219, *amended* 610 F.2d 648 (9th Cir. 1979).

The defendant in the case before us may have submitted to a search of his outbuildings, but he never explicitly authorized a search of them. In regard to the smaller, locked barn in which the marijuana was found, he told police that he did not have a key to the barn and that he had rented the barn to another person. These statements could not have been intended nor could they have been reasonably interpreted by the police to constitute the equivalent of an authorization to remove the lock and search the barn. *See United States v. Patacchia supra;* 2 W. LAFAVE, *supra* at 625. The trial court's finding of consent to search the outbuildings is wholly unsupported by evidence in the record that the defendant specifically authorized a search of these buildings. *See State v. McGann, supra* at 106, 467 A.2d at 574.

■ We therefore conclude that the search of the outbuildings unlawfully exceeded the defendant's consent, *see State v. Billups supra*, and violated the defendant's constitutional rights under the fourth amendment and part I, article 19. We hold that the trial court erred in failing to grant the defendant's motion to suppress items taken in the search.

Turning to the defendant's next contention—that his statements ought to have been suppressed—, we find the fourth amendment and part I, article 19 also to be dispositive. We therefore find it unnecessary to address defendant's argument that he did not waive his right to counsel and his right against self-incrimination.

Because the search of the outbuildings was unlawful, we conclude that any statements resulting from the search must be suppressed as "fruit of the poisonous tree."

This court has often addressed the doctrine of the "fruit of the poisonous tree" in the context of illegal arrest. *See, e.g., State v. Chaisson*, 125 N.H. 810, 486 A.2d 297 (1984); *State v. Tapply*, 124 N.H. 318, 470 A.2d 900 (1983); *State v. Palamia*, 124 N.H. 333, 470 A.2d 906 (1983); *State v. Birmingham*, 122 N.H. 1169, 453 A.2d 1329 (1982). We have noted that a confession made during an illegal arrest must be excluded, unless the State demonstrates that an intervening event or other factor has broken the causal link between the illegal arrest and the confession so that the confession is "'sufficiently an act of free will to purge the primary taint.'" *State v. Birmingham, supra* at 1171, 453 A.2d at 1330 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)); *see Brown v. Illinois*, 422 U.S. 590, 602 (1975).

■ An incriminating statement may also be a fruit of an illegal search. *Ruiz v. Craven*, 425 F.2d 235 (9th Cir. 1970); *United States v. Marrese*, 336 F.2d 501 (3d Cir. 1964); *People v. Robbins*, 54 Ill. App. 3d 298, 369 N.E.2d 577 (1977); *see* 3 W. LaFave, Search and Seizure § 11.4(c) (1978). A statement may be tainted by an illegal search because "[c]onfronting a suspect with illegally seized evidence tends to induce a confession by demonstrating the futility of remaining silent." *People v. Robbins, supra* at 305, 369 N.E.2d at 581, *quoted in* 3 W. LaFave, *supra* at 639.

■ The defendant in the instant case was present when the incriminating evidence was found during the search. The statement he made at that time and the later statement made on the way to the stationhouse are directly related to the fact that the defendant was confronted with illegally obtained evidence. The record reveals no intervening event that would have removed the taint from these statements. *See State v. Birmingham, supra* at 1171, 453 A.2d at

1330. We therefore conclude that the statements also should have been suppressed as fruits of the illegal search, under the fourth amendment and part I, article 19. On this basis, we hold that the trial court erred in failing to suppress the statements.

*Reversed.*

All concurred.