Belknap
No. 92-185

THE STATE OF NEW HAMPSHIRE

v.

ADAM BAROUDI

April 13, 1993

*John P. Arnold*, attorney general (*Brian R. Graf*, assistant attorney general, on the brief and orally), for the State.

*Timothy M. Landry*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Adam Baroudi, was convicted of possession of marijuana. He appeals the Superior Court's (*O'Neil*, J.) denial of his motion to suppress the controlled drug, which two police officers discovered while searching a closed knapsack in the trunk of his car. Although Baroudi did not explicitly give the officers permission to search the knapsack, the superior court found that Baroudi authorized the officers to search the trunk and that the scope of this search extended to the knapsack. The sole issue before us is whether the superior court properly employed an objective standard in making its ruling, basing its findings on the totality of the circumstances as reasonably construed by the police officers, or whether the court should have instead grounded its decision on a

determination of Baroudi's actual state of mind at the time of the search. For the reasons that follow, we approve the objective standard used by the superior court and affirm.

At trial, the police officers testified to the following relevant facts. They stopped Baroudi's car after witnessing Baroudi engage in what they suspected was a drug transaction. They then requested his permission to search the car's passenger compartment, making it clear they wished to search for drugs and informing him he could stop the search at any time. Baroudi consented, and they proceeded, examining among other things the contents of the glove compartment, although they neither sought nor received specific authorization to search this particular area. They found no drugs. The officers then asked Baroudi if they could search his trunk. He assented. Inside the trunk, the officers found a closed knapsack, and again without seeking or receiving specific authorization, they opened the zipped compartments of the knapsack and discovered the marijuana.

Baroudi denies giving permission to search any area of his car or anything in it, but concedes that the trial record supports the superior court's finding that the search proceeded as outlined above. He also concedes that if we approve the objective test used by the superior court, instead of a test based on a determination of his actual intent, his appeal fails. The State, for its part, concedes that the officers' search of Baroudi's knapsack cannot withstand constitutional scrutiny unless it was consensual. The only issue on appeal is therefore whether the superior court applied the proper test in determining that the scope of Baroudi's consent to search the trunk of his car extended to his knapsack. His argument, and our decision, is grounded in part I, article 19 of the New Hampshire Constitution, which states in part that "[e]very subject hath a right to be secure from all unreasonable searches." We base our decision upon our own case law, using federal cases only for guidance. *See State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 351 (1983).

Although Baroudi treats this case as one of first impression, there is ample support in our case law for the superior court's use of a test based on the objectively reasonable perceptions of police officers seeking a defendant's consent to search an area under the defendant's control. We declared in *State v. Pinder* that "[t]he question of the scope of consent may be stated as 'how far the defendant intended the consent to extend *or* how the police reasonably construed his consent.'" *State v. Pinder*, 126 N.H. 220, 224, 489 A.2d 653, 656 (1985) (emphasis added) (quoting 2 W. LAFAVE, SEARCH AND SEIZURE § 8.1(c), at 625 (1978)). Our use of the disjunctive "or" unequiv-

ocally allows a court to base a determination of a defendant's consent on a police officer's objectively reasonable impressions. The treatise relied on in *Pinder*, moreover, explicitly states that the reasonableness of a search "is to be assessed in terms of the circumstances as they reasonably appear to the police at the time of the search." 3 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.1(b), at 159 n.44 (2d ed. 1987) (discussing the fourth amendment to the United States Constitution); *cf. State v. Jones*, 131 N.H. 726, 728, 560 A.2d 1159, 1160 (1989) (determination of consent is based on the totality of the circumstances). This treatise concludes that, ordinarily, "a general consent permits the opening of closed but unlocked containers found in the place as to which consent was given[,] . . . particularly if the police have indicated they are searching for a small object which might be concealed in such a container." 3 LAFAVE, *supra* § 8.1(c), at 161.

 In addition, our decisions in the confession and custody contexts would make the adoption of Baroudi's proposed actual intent standard anomalous here. In both of these contexts, an objective standard is employed to determine whether a defendant's constitutional rights have been violated. For example, an individual is "seized" for purposes of part I, article 19 of the New Hampshire Constitution if, under the circumstances, a reasonable person would have believed that he or she was in custody. *State v. Green*, 133 N.H. 249, 258, 575 A.2d 1308, 1314 (1990). In the area of confessions, "the determination of voluntariness [is] made in light of the totality of all the surrounding circumstances," *State v. Damiano*, 124 N.H. 742, 747, 474 A.2d 1045, 1048 (1984) (quotation omitted); "an inquiry into a confessor's mental condition can never be dispositive in applying the constitutional concept of voluntariness," *State v. Chapman*, 135 N.H. 390, 400, 605 A.2d 1055, 1062 (1992) (quotation omitted). Baroudi offers no reason why a subjective standard should be employed in the search context, but not in the confession or seizure contexts.

The objective standard is a logical choice for several reasons. First and most important, part I, article 19 of the New Hampshire Constitution protects citizens from "*unreasonable* searches" (emphasis added); reasonable searches do not violate this provision. If a police officer's objectively reasonable perceptions lead him or her to believe that a defendant has consented to a search, a search conducted pursuant to this belief is reasonable. If, in spite of the defendant's outward manifestations of consent, the defendant in fact harbors a contradictory, but unarticulated, intention to withhold consent, the officer's search does not thereby become unreasonable. Our constitu-

tion does not require police officers to plumb the depths of a defendant's mind before performing their duties in ferreting out criminal wrongdoing.

Second, a subjective test would likely prove unworkable. We recognized this problem in *State v. Riley*, 126 N.H. 257, 490 A.2d 1362 (1985), when we adopted the objective standard for determining when a person is in custody:

> "If the subjective beliefs of the participants in the arrest are determinative of a finding of arrest, the determination turns on the mindset and, ultimately, the credibility of each. It is not difficult to imagine a situation in which a law enforcement officer did not intend to arrest an individual, yet the individual believed that he was under arrest. Hence, under a purely subjective analysis, a court would have to conclude that an arrest had not occurred, despite the unreasonableness of either of the participants' beliefs."

*Id.* at 261–62, 490 A.2d at 1365.

■ Accordingly, we adopt the objective standard advocated by the State. To meet its burden of establishing consent to a search in accordance with the mandates of part I, article 19 of the New Hampshire Constitution, the State must show that, under the circumstances surrounding the search, it was objectively reasonable for the officers conducting the search to believe that the defendant had consented to it. As Baroudi concedes, the State here has met this burden. The police officers made it clear they were searching for drugs, and therefore it was logical for them to assume that when Baroudi consented to a search of the trunk, he was allowing them to search anything in it that might contain drugs. It is common knowledge that when drug users and dealers transport their contraband, they generally hide it in containers rather than leaving it lying about in plain view. Moreover, before opening the knapsack, the officers had already made a thorough examination of the contents of Baroudi's glove compartment after he consented to a search of the interior of his car. Baroudi did not object, although the officers had told him he could stop the search at any time. It was therefore reasonable for the officers to believe that, once Baroudi consented to the search of the trunk, they also had his permission to open the knapsack and search it in a similarly thorough manner.

*Affirmed.*

All concurred.