Strafford
No. 99-767

THE STATE OF NEW HAMPSHIRE

v.

CHARLES SAWYER

November 19, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Kazarosian Law Offices*, of Haverhill, Massachusetts (*Mark L. Stevens* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Charles Sawyer, appeals his convictions by a jury in Superior Court (*Fauver*, J.) for possession with intent to distribute marijuana and hashish. *See* RSA 318-B:2 (1995). On appeal, he contends that the Superior Court (*T. Nadeau*, J.) erroneously: (1) denied his motion to suppress evidence obtained from a warrantless search of an automobile in which he was a passenger; and (2) ruled that statements he made in violation of his *Miranda* rights could be used against him for impeachment purposes. *See Miranda v. Arizona*, 384 U.S. 436 (1966). We affirm.

The following facts were either found by the trial court or appear in the record and are not disputed by the parties on appeal. On January 24, 1999, Rochester Police Officer Michael McQuade stopped a vehicle driven by Joseph Stearns for speeding. The defendant and Leonard Geomelis were passengers in the vehicle. When Officer McQuade approached the car, he "detected a strong odor of fresh marijuana emitting from the interior of the vehicle." After learning that Stearns had just come from a bar, Officer McQuade asked Stearns to exit the vehicle and conducted a field sobriety test on him, which he passed.

Officer McQuade then asked Stearns whether there were any weapons or drugs in the vehicle and Stearns replied that there were not. Officer McQuade asked Stearns for consent to search the vehicle, to which he replied, "yes, absolutely." Officer McQuade then asked the two passengers to exit the vehicle. While Officer Frazier, who had since arrived on the

scene, watched the men, Officer McQuade searched the vehicle. During his search, Officer McQuade detected the smell of marijuana in an area near a black nylon bag on the back seat floor, behind Stearns' seat. The bag had rigid sides and was of the type often used to hold tape cassettes or compact discs. He picked it up and determined that the odor came from it. After unzipping it, he saw several bags of marijuana inside. At that point, the officers handcuffed the three men. Geomelis asked why they were being handcuffed and Officer McQuade said that it was because he found drugs in the car. The defendant stated, "They don't have anything to do with this." Officer Fraser asked, "Who does have something to do with this?" and the defendant said, "I do. It's mine." Thereafter, the defendant was informed of his *Miranda* rights.

The defendant filed two motions to suppress. First, he sought to suppress the contents of the black bag. Next, he sought to suppress his statements regarding ownership of the marijuana, which he made prior to being advised of his *Miranda* rights.

After a hearing, the court found that Officer McQuade had consent to search the vehicle and that, based upon the totality of the circumstances, it was reasonable for him to presume that he had consent to search all of the items in the vehicle, including the defendant's black bag. Additionally, the court found that the search of the bag was permissible under the plain view doctrine. The court further ruled that while the State could not use the defendant's pre-*Miranda* statements substantively, it could introduce them against him for impeachment purposes. This appeal followed.

I

The defendant argues that the trial court erroneously denied his motion to suppress the contents of the black bag under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution because: (1) Stearns had no authority to consent to the search of the defendant's bag; and (2) the plain view exception to the warrant requirement does not apply.

"Our review of the superior court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the superior court level in the first instance." *State v. Leiper*, 145 N.H. 233, 234 (2000) (quotation and brackets omitted). We consider the defendant's arguments first under Part I, Article 19 of the New Hampshire Constitution, employing federal cases only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 231 (1983). Because the New Hampshire Constitution is at least as protective as the Federal Constitution in this area, we need not conduct a separate federal analysis. *See Leiper*, 145 N.H. at 234.

■ "A warrantless search is *per se* unreasonable and invalid unless it comes within one of a few recognized exceptions." *State v. Graca*, 142 N.H. 670, 673 (1998) (quotation omitted). "One such exception exists where the officer has consent to … search the [property]." *State v. Coyman*, 130 N.H. 815, 818 (1988) (quotation and brackets omitted).

Whether a driver may validly consent to the warrantless search of the personal effects of a passenger is a matter of first impression in this jurisdiction. We have previously held that "[c]onsent to search is valid against a defendant when conferred by a third party with ‘common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *State v. Wong*, 138 N.H. 56, 61 (1993) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). In this case, however, the State does not claim that Stearns had actual authority over the defendant's bag. Rather, the State argues that Stearns had apparent authority to consent.

■ The doctrine of apparent authority validates a search if the police reasonably, but mistakenly, believe that a third party consenting to the search has the authority to do so. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). The standard for assessing apparent authority is an objective one: to determine whether a police officer's belief was objectively reasonable, a court must examine whether "the facts available to the officer at the moment … [would] warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises." *Id.* at 188 (quotations omitted). If the surrounding circumstances would cause a reasonable person to doubt whether the third party had the requisite authority, then the officer must make further inquiry to ensure that the person giving consent has authority to do so. *Id.*

We have recognized the existence of the doctrine of apparent authority, *see Coyman*, 130 N.H. at 820, and have employed a similar standard to determine the scope of an individual's consent to search his own container. *See State v. Baroudi*, 137 N.H. 62, 65-66 (1993). In *Baroudi*, we held that a warrantless search of a defendant's property may be constitutional if the State shows that "under the circumstances surrounding the search, it was objectively reasonable for the officers conducting the search to believe that the defendant had consented to it." *Id.* at 66.

The United States Supreme Court has not yet applied the apparent authority doctrine to the search of a passenger's container in an automobile, but state and federal courts have done so. These courts have engaged in a fact-specific inquiry to determine whether it was objectively reasonable for the officer to believe that the driver had the authority to consent to the search of the passenger's container.

One factor upon which courts have relied to find an officer's belief reasonable is a passenger's failure to object to the search. For example, in *State v. Frizzel*, 975 P.2d 1187, 1190 (Idaho Ct. App. 1999), the court found that it was objectively reasonable for the officer to believe that the driver's consent to search the car extended to the passenger's backpack left on the passenger's seat because the passenger knew that the officer wished to search the car for drugs and remained silent when the officer searched the passenger side of the vehicle. *See also State v. Walton*, 565 So. 2d 381, 383-84 (Fla. Dist. Ct. App. 1990).

A passenger's failure to claim ownership of the property to be searched or to object to the search is not necessarily dispositive, however. In *State v. Friedel*, 714 N.E.2d 1231 (Ind. Ct. App. 1999), based upon the driver's consent to search the vehicle, the police searched the passenger's purse found on the floor behind the driver's seat, where the passenger had been sitting. *Id.* at 1235. The court found that it was not objectively reasonable for the police to believe that the driver had the authority to consent to search the purse because it was a woman's handbag and the passenger was the only female occupant of the car. *Id.* at 1240. The court further ruled that the passenger's consent to the search could not be implied from her silence or failure to object because she had never been asked for consent. *Id.* at 1241.

Another factor courts have considered when determining if a police officer's belief is reasonable is whether the passenger abandoned the property prior to the search. *Compare Frizzel*, 975 P.2d at 1190 (reasonable for officer to believe he had consent to search backpack where passenger left it in vehicle voluntarily and did not attempt to exercise control over it until police questioned him about it) *with Brown v. State*, 789 So. 2d 1021, 1024 (Fla. Dist. Ct. App. 2001) (unreasonable for officer to believe he had consent to search fanny pack where passenger merely complied with officer's request that she place it on floorboard upon exiting vehicle); *cf. Leiper*, 145 N.H. at 235-36 (premises-wide search warrant may include search of containers owned by visitor provided that visitor relinquished control over them).

■ The defendant urges us to reject the apparent authority doctrine because, in other contexts, we have held that the State Constitution is more protective than the Federal Constitution with respect to unreasonable searches and seizures. We have not previously construed the consent exception to the warrant requirement more narrowly than the United States Supreme Court construes the consent exception under the Federal Constitution, however, and we decline to do so in this case. *Cf. Wong*, 138 N.H. at 60 (holding that "Part I, Article 19 of the State

Constitution does not require a higher standard" than the Federal Constitution in determining scope of third party's consent to search).

■■ We now adopt the doctrine of apparent authority with respect to consensual searches. Whether a third party has apparent authority to consent is determined by an objective test. Apparent authority exists when, under the totality of the circumstances available to the police at the time, it was objectively reasonable to believe that the third party had authority to consent to the search of the property in question. *See Rodriguez*, 497 U.S. at 188. Law enforcement officers may not, however, blindly accept a person's consent to search. If the surrounding circumstances would cause a reasonable person to doubt whether the third party had authority to consent to the search, the officers may not lawfully act upon the consent without further inquiry. *Id.*

■ Next, we address whether, based upon the totality of the circumstances, it was reasonable for Officer McQuade to have believed that Stearns had authority to consent to the search of the defendant's bag. In this case, as in *Baroudi*, the police made it clear that they were searching for drugs. *See Baroudi*, 137 N.H. at 66. Thus, as in *Baroudi*, it was logical for the police to assume that they had permission to search containers inside the car that might contain drugs. *See id.*; *see also Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Further, the bag was not of the type that, on its face, could not reasonably have been believed to belong to Stearns. Rather, Officer McQuade testified that it was of the type often used to hold tape cassettes or compact discs. This type of bag could reasonably be believed to belong to Stearns, particularly when it was found behind his seat. In addition, Stearns did not object to the search of the bag. Based upon the totality of the circumstances, we hold that it was reasonable for Officer McQuade to believe that Stearns had authority to consent to the search of the bag.

The defendant argues that his failure to object is immaterial. We agree that, under the circumstances in this case, his failure to object, while relevant to assessing the reasonableness of Officer McQuade's belief, had little or no probative value. Although the trial court found, and the defendant does not dispute, that he was in the immediate vicinity when Stearns consented to the search, the record is unclear as to whether the defendant heard the request to search and Stearns' response or whether he observed the search. The defendant argues that under these circumstances, Officer McQuade should have made an effort to ascertain whether Stearns had authority to consent to the search of the bag or to determine to whom the bag belonged. We disagree. The circumstances

here were not so ambiguous as to require Officer McQuade to make this inquiry.

We find support for our position in *State v. Maristany*, 627 A.2d 1066 (N.J. 1993). In *Maristany*, the New Jersey Supreme Court upheld the search of a piece of luggage located in the trunk of a car based upon the driver's consent to search. *Id.* at 1067-70. The court ruled that the State Trooper's reliance upon the driver's consent was objectively reasonable, even though there was more than one occupant in the car and more than one piece of luggage. The court noted that

> there was nothing to alert [the officer] that both, none, or only one of the bags belonged to [the driver]. Neither bag contained identification. Further, the type of luggage, a canvas gym bag and a suitcase, did not compel the conclusion that one bag belonged to each of the occupants. If, at the time of the search, [the driver] had denied ownership of the gym bag, or the defendant had claimed ownership of the bag, we might conclude that the officer's reliance on [the driver's] consent was unreasonable. However, under these circumstances, for [the officer] to believe that [the driver] had apparent authority to consent to the search of both the gym bag and the brown suitcase was objectively reasonable.

*Id.* at 1070 (citations omitted).

Because we find the search justified by the consent exception to the warrant requirement, we need not examine whether it was also justified by the plain view exception.

## II

The defendant contends that the trial court erroneously ruled that his pre-*Miranda* statements could be used against him for impeachment purposes. This claim is too speculative for our review because the defendant never testified, and therefore was never impeached. "Only if the defendant had taken the stand and suffered impeachment by the statement's use would an issue be ripe for adjudication here." *State v. Bruneau*, 131 N.H. 104, 115 (1988).

*Affirmed.*

BROCK, C.J., and BRODERICK and DUGGAN, JJ., concurred.