Merrimack
No. 2001-364

### THE STATE OF NEW HAMPSHIRE

#### v.

#### MARK SZCZERBIAK

Argued: June 12, 2002
Opinion Issued: September 18, 2002

*Philip T. McLaughlin*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, by brief and orally, for the defendant.

DALIANIS, J. Following a bench trial on stipulated facts, the defendant, Mark Szczerbiak, was convicted of possession of a controlled drug, *see* RSA 318-B:2, I (Supp. 2001). On appeal, he argues that the Superior Court (*Fitzgerald*, J.) erroneously denied his motion to suppress evidence obtained during an allegedly unconstitutional search and seizure. We affirm.

The following facts were adduced at the suppression hearing. On July 15, 2000, the Danbury Police Chief received a call informing him of a party at a residence on Forbes Mountain Road. Later that evening, young people in several vehicles stopped and asked the chief for directions to the residence. The occupants of the last such vehicle asked him if he was going to "break up the party." Based upon the number of young people he saw heading towards the residence and the question regarding whether he was going to "break up the party," the chief decided to drive to the party.

The chief arrived at the residence at approximately 11:00 p.m. As he approached, he heard loud music and screaming and saw four individuals sitting on a jeep near the driveway's entrance, including a young woman holding a beer. After getting out of his cruiser, the chief approached the

individuals on the jeep and told them to sit on the lawn and produce identification. He then took the young woman into custody because she was underage and in possession of alcohol. The other individuals were of age, but were told to stay seated. Soon thereafter, another person attending the party wandered down the driveway with a beer. The chief took him into custody as well because he was underage and in possession of alcohol.

The chief then called for back-up. When the additional officers arrived, they walked up the driveway. They first told the partygoers to move towards the house and sit on the ground. They then asked each individual for identification. During a search of the grounds, the chief found a backpack containing alcohol.

New Hampshire State Trooper Edward Flynn was one of the officers who entered the property and asked individuals for identification. He approached the defendant, who was seated and had a knapsack hanging over his shoulder. He asked the defendant "if he would mind standing up." He then asked the defendant if he had any identification on him, and if so, if he could produce it. After he examined the identification and confirmed that the defendant was over twenty-one years old, he requested permission to search the defendant. The defendant placed his knapsack on the ground next to him and submitted to a pat-down search, which did not reveal any contraband. Trooper Flynn then picked up the knapsack and searched it. He found drugs inside the knapsack, and arrested the defendant.

"Our review of the superior court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the superior court level in the first instance." *State v. Sawyer*, 147 N.H. 191, 193 (2001) (quotation omitted).

The defendant argues that the trooper violated his rights under Part I, Article 19 of the State Constitution and the Fourth Amendment to the Federal Constitution. *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We consider his arguments first under the State Constitution, using federal cases to aid in our analysis only. *See Sawyer*, 147 N.H. at 193. Because the State Constitution is at least as protective as the Federal Constitution in this area, we need not conduct a separate federal analysis. *See id.*

"Under the New Hampshire Constitution, all warrantless searches are *per se* unreasonable, unless they conform to the narrow confines of a judicially recognized exception." *State v. Sterndale*, 139 N.H. 445, 447 (1995). "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." *Id.* One such exception exists where the defendant has consented to the search. *See*

*Sawyer*, 147 N.H. at 194. The defendant argues that his consent was "tainted" because it was obtained as a result of an unlawful seizure. *See State v. Hight*, 146 N.H. 746, 748-51 (2001).

The State argues for the first time on appeal that the defendant was not, in fact, seized when the trooper asked for consent to search him. This argument is contrary to what the State asserted before the trial court and, thus, we decline to consider it. *See Sterndale*, 139 N.H. at 448. In its objection to the defendant's motion to suppress, the State asserted that the defendant was detained pursuant to a valid investigatory stop. Therefore, for the purposes of this appeal, we assume, without deciding, that the defendant was seized when the trooper sought his consent.

We first examine whether the detention of the defendant was unlawful. The defendant concedes that the trooper initially detained him pursuant to a lawful investigatory stop. He contends, however, that the trooper detained him longer than was necessary for the stop's purpose.

"In order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *Id.* at 748 (quotation omitted). "During a detention, an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *State v. Roach*, 141 N.H. 64, 68 (1996) (quotation omitted). The scope of the stop, however, must be "carefully tailored to its underlying justification — to confirm or dispel the officer's particular suspicion." *Id.* (quotation omitted). The stop must last no longer than is necessary to effectuate its purpose. *Id.*

The purpose of Trooper Flynn's initial detention of the defendant was to confirm or dispel his suspicion that the defendant was an underage drinker. As the trooper testified at the suppression hearing, his plan was "to check people's ID to see how old they were and whether they were underage or not underage." Once the defendant produced his identification and the trooper confirmed that he was over twenty-one years of age, the purpose of the stop was fulfilled.

In order to detain the defendant further, the trooper had to articulate an additional reason for the stop. The State argues that the trooper was justified in detaining the defendant further because he had a "legitimate safety concern that there might be a weapon in the bag or on the defendant." "Once an officer is justified in making an investigatory stop, he may also conduct a protective frisk if the officer justifiably believes the individual is armed and presently dangerous." *Roach*, 141 N.H. at 67

(quotation omitted). The *sole* purpose of a protective frisk "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* (quotation omitted).

■ Assuming, without deciding, that the pat-down frisk of the defendant was justified under this rationale, the trooper's subsequent search of the knapsack was not. The trooper did not merely "pat-down" the knapsack, but searched its contents thoroughly. "This was no mere frisk, but a full-blown search." *State v. Coons*, 137 N.H. 365, 367 (1993). Because the trooper did not confine his search of the knapsack "strictly to what was minimally necessary to discover the presence of a weapon," his search of the knapsack was not a permissible extension of the initial investigatory stop. *Id.* at 368.

On appeal, the State, for the first time, argues that the trooper suspected that the defendant had alcohol either on his person or in his knapsack that might be given to minors. *See* RSA 179:5, I (2002). Before the trial court, however, the State did not offer this justification for detaining the defendant. "Consequently, the defendant and the trial court never had the opportunity to consider that legal issue or the development of facts that might or might not have supported that argument. Without such consideration, we will not address the issue on appeal." *State v. Santana*, 133 N.H. 798, 809 (1991). Accordingly, we conclude that the trooper was not justified in detaining the defendant any longer than was necessary to review his identification and determine his age. *See Hight*, 146 N.H. at 749.

■ We next examine the effect, if any, that the defendant's unlawful detention had on his subsequent consent to search his knapsack. *See id.* To determine this, we ask whether the State has purged the taint of the unlawful detention by considering: (1) the temporal proximity between the unlawful detention and the consent to search; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id.* at 750.

As in *Hight*, there is complete temporal proximity between the unlawful detention and the defendant's consent since the defendant gave his consent *while* unlawfully detained. *See id.* In addition, as in *Hight*, there were no intervening circumstances, such as the trooper informing the defendant that he had the right to refuse to consent, which would purge the taint of the unlawful detention. *See id.* Because of the proximity between the unlawful detention and the consent, "there is a serious risk that the defendant felt some compulsion to consent because he believed that he was still under the lawful authority of the [trooper] at the time the [trooper] requested his consent." *Id.*

With respect to the third factor, however, we are not faced with facts similar to those we found troubling in *Hight*. In *Hight*, the officer sought consent to search the defendant's car and person based upon innocuous facts such as that he had driven from Boston to "hang out," had attended a "frat party," and was returning to college in Vermont. *Id.* at 751. Moreover, the officer sought consent while retaining possession of the defendant's license and registration and his suspicions extended only to the African-American defendant, not to his two Caucasian passengers. *Id.*

By contrast, in this case, it is a close question as to whether the defendant was "seized" when the trooper sought his consent. "Not every encounter between a police officer and an individual is a seizure subject to constitutional protection." *State v. Brunelle*, 145 N.H. 656, 658 (2000). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *State v. Cote*, 129 N.H. 358, 364 (1987) (quotation omitted). To determine whether a seizure occurred, we ask whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 365 (quotation omitted).

We need not, for the purposes of this appeal, resolve the issue of whether the defendant was "seized" when the trooper sought his consent. As previously noted, the State failed to preserve this issue for our review. *See Santana*, 133 N.H. at 809. Nonetheless, we observe that whether the trooper so restrained the defendant's liberty as to constitute a "seizure" is debatable. *See Brunelle*, 145 N.H. at 658 (court doubts seizure occurred when trooper requested license and registration of individual already stopped who was moving disabled vehicle into State parking area).

■ Under these circumstances, we decline to hold that the trooper's conduct was "flagrant." One of the reasons we require the government to prove that any taint of an illegal seizure has been purged is to deter police misconduct. *See Hight*, 146 N.H. at 749. Where it is a close question as to whether the defendant was even detained, it would not further the deterrence purpose to hold that his subsequent consent was "tainted." Thus, balancing the three *Hight* factors, we conclude that the State has purged the taint of the unlawful detention and that the unlawful detention did not vitiate the defendant's consent to search. We will, however, continue to examine the conduct of law enforcement officers when consent is sought for searches in such circumstances.

We next examine whether the defendant's consent to search extended to the search of his knapsack. The defendant argues that by removing his knapsack from his shoulder before submitting to the frisk, he intended to

place it outside the scope of the search to which he had agreed. Thus, he asserts, it was unreasonable for the trooper to assume that his consent to search his person extended to his knapsack. We disagree.

To determine the scope of consent, we employ an objective test. *See State v. Baroudi*, 137 N.H. 62, 66 (1993). We ask whether "under the circumstances surrounding the search, it was objectively reasonable for the officers conducting the search to believe that the defendant had consented to it." *Id.*

█ It was objectively reasonable for the trooper to believe that the defendant consented to a search of his knapsack. When the trooper requested and the defendant gave his consent, the knapsack was hanging off the defendant's shoulder. Moreover, when the trooper actually searched the knapsack, the defendant not only failed to protest, but also informed the trooper that the knapsack contained both a gun and ammunition. Under these circumstances, it was reasonable for the trooper to believe that the defendant's consent to search his person extended to his knapsack. *See id.*

*Affirmed.*

NADEAU and DUGGAN, JJ., concurred.