Hillsborough
No. 82-584

### THE STATE OF NEW HAMPSHIRE

v.

### JOSEPH R. PALAMIA

December 27, 1983

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief, and *T. David Plourde*, attorney, orally), for the State.

*William A. Bolton* and *Michael Manzi*, of Lawrence, Massachusetts (*Mr. Bolton* and *Mr. Manzi* on the brief, and *Mr. Manzi* orally), for the defendant.

BROCK, J.   In September 1981, the defendant, Joseph R. Palamia, was indicted for accomplice to burglary (RSA 626:8) and burglary (RSA 635:1). The issue presented in this interlocutory appeal from a ruling is whether the Trial Court (*Pappagianis*, J.) erred in denying the defendant's motion to suppress his confession, which was obtained after an admittedly illegal arrest. Because the taint of the illegal arrest was not removed, we hold that the confession was obtained in violation of the fourth amendment to the United States Constitution and must be suppressed. Accordingly, we reverse.

We are without a transcript of the suppression hearing. The facts referred to below are taken from the parties' agreed statement of facts. An automobile in which the defendant was a passenger was

stopped in Wilmington, Massachusetts, by the Wilmington police at approximately 11:00 p.m. on November 21, 1982. The driver of the car was arrested for driving under the influence. The defendant-passenger was handcuffed, placed in a separate cruiser, and transported to the Wilmington police station. The defendant testified that when he asked why he was arrested, he was told, "Don't worry, we'll find something."

Upon learning that the defendant's driver's license listed Groton, Massachusetts, as his address, the Wilmington police contacted the Groton police department and were informed that the Pepperell, Massachusetts, police had a fugitive warrant outstanding against the defendant. The defendant was subsequently transported from the Wilmington police station to the Billerica House of Correction in Billerica, Massachusetts, where he was held for a period of time, and then to the Ayer police station, in Ayer, Massachusetts. The record is silent as to what prompted the involvement of the Ayer police.

The defendant had no contact with family, friends, or anyone other than members of the Ayer police department until approximately 5:00 p.m. on November 22, 1982. At that time, two members of the Hudson, New Hampshire, police department arrived to interview the defendant about a breaking and entering that had occurred in Hudson in December 1980. The defendant was advised of his *Miranda* rights, after which he reviewed and executed a waiver of rights form. He then made and signed the confession which is the subject of his motion to suppress in this case. We note that the defendant was never charged with anything as a result of the November 21, 1982, incident.

Based upon counsels' statements at oral argument, it is our understanding that the defendant is not contesting the voluntariness of his statement for federal fifth amendment purposes, but rather argues that under a federal fourth amendment analysis, the confession is an inadmissible fruit of the illegal arrest. The State concedes, for purposes of all the proceedings, that the arrest was illegal, but argues that the taint of the illegal arrest was removed before the officers received the confession.

■■ Our analysis begins from the illegal arrest. The defendant's confession was obtained as a result of that arrest. For the confession to be admissible, the State must show that the act of giving the statement was sufficiently a product of the defendant's free will so as to break the causal connection between the illegality and the confession. *Taylor v. Alabama*, 457 U.S. 687, 690 (1982); *State v. White*, 119 N.H. 567, 570–71, 406 A.2d 291, 293 (1979). The relevant

factors in determining whether the confession was obtained by exploiting the illegal arrest are whether the *Miranda* warnings were given, "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances," and "particularly, the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975); *State v. White*, 119 N.H. at 570–71, 406 A.2d at 293.

■ In the present case, *Miranda* warnings were given. However, it is clear that *Miranda* warnings *per se* do not remove the taint of the illegal arrest. *Taylor v. Alabama*, 457 U.S. at 690; *State v. White*, 119 N.H. at 570, 406 A.2d at 293.

With regard to the temporal proximity of the arrest and confession, this defendant was held in custody for eighteen hours in three different locations under three different authorities. He was not allowed to contact family or friends. The State argues that the eighteen hours between the arrest and the subsequent confession, and the lack of allegations of coercion, intimidation, or physical abuse, suggest that the defendant had ample opportunity for detached reflection and thus his statement was an exercise of his free will.

■ We conclude that the mere passage of time in this case not only did not remove the taint, but may well have exacerbated the taint. *See Dunaway v. New York*, 442 U.S. 200, 220 (1979) (Stevens, J., concurring) ("If there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one."). Moreover, the fact that the conditions of his confinement were not *physically* debilitating or abusive does not, in these circumstances, militate a finding that his statement was therefore a product of his free will. *See Taylor v. Alabama*, 457 U.S. at 693; *State v. White*, 119 N.H. at 571, 406 A.2d at 293.

We further conclude that there were no intervening circumstances of significance and that the purpose of the arrest was clearly improper. The State argues that the following constituted intervening circumstances sufficient to break the nexus between the illegal arrest and the confession: first, the Wilmington police had no reason for the arrest and were unaware of any connection between the defendant and the New Hampshire burglary. Therefore, the State argues, the arrest lacked the deliberate investigatory purpose of extracting a confession to that crime; second, subsequent to the arrest, the Wilmington police discovered the existence of an earlier warrant, and therefore, upon learning of this information, they then had probable cause to arrest and detain him; and third, the New

Hampshire police were independent from and unaware of the circumstances of the defendant's arrest and obtained the confession only after there existed probable cause to arrest and detain him.

■ First, the State's argument that the lack of a reason prompting the illegal arrest is an *intervening* circumstance between the arrest, itself, and the subsequent confession, is illogical. Further, the State argues that the cases excluding confessions resulting from illegal arrests have involved "investigatory" arrests in which the defendant was suspected of having committed a particular crime. The State distinguishes the instant case and, in effect, argues that the failure to have *any* reason to arrest somehow purges the arrest of its own taint. Although the defendant was not detained in the hope of obtaining incriminating statements in relation to a crime of which he was suspected, it is clear that he was detained "in the hope that something might turn up." *Brown v. Illinois*, 422 U.S. at 605. A "fishing expedition" undertaken with *no* basis for suspicion is no more proper than an investigatory arrest based on less than probable cause.

■■ Second, although the Wilmington police may have had probable cause to detain at the time they learned of the outstanding warrant, the subsequent knowledge that probable cause existed does not remove the taint of the original illegal arrest. The information received, which established probable cause, was a direct fruit of the prior illegal arrest. The Wilmington police learned of the outstanding warrant only after initiating a search for grounds upon which to justify their previous illegal conduct. That information and the confession which followed, during a period of continuous custody, were obtained by exploiting that illegality and not "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quoting MAGUIRE, EVIDENCE OF GUILT 221 (1959)). The State argues that releasing the defendant after learning that he is wanted on a fugitive warrant is bad policy and presents a danger to society. We submit that it is antithetical to the principles of a democratic society to seize someone and hold him for 18 hours, while shopping around to see if a reason exists for the detention. *See* FRANZ KAFKA, THE TRIAL (1937).

■ Finally, the State argues that, subsequent to the discovery of information establishing probable cause, the obtaining of the confession, by an independent police force, which was unaware of the original illegality, is an intervening circumstance sufficient to remove the taint. We believe that our discussion above, which concludes that the subsequent acquisition of knowledge that probable cause exists,

in these circumstances, does not remove the taint of the original arrest, is controlling whether the confession was obtained by the original violators or by those who stand in their place further down in an unbroken chain of custody.

■ The State contends that excluding the confession, in this case, would unfairly penalize the Hudson police against whom no allegation of impropriety is made. The proper focus, however, is upon the protection of the defendant's constitutional rights, not which sub-unit of government violated them. To admit the confession would allow the Wilmington police "to violate the Fourth Amendment with impunity, safe in the knowledge that they could wash their hands in the 'procedural safeguards' of the Fifth", which safeguards were administered in the instant case by another police force. *Dunaway v. New York*, 442 U.S. at 219 (quoting Comment, *Criminal Procedure—Fourth Amendment Exclusionary Rule—Miranda Warnings Do Not Per Se Render Admissible A Confession Following An Arrest Which Violates Fourth Amendment Rights*, 25 EMORY L.J. 227, 238 (1976)).

■ For the foregoing reasons, we hold that the confession obtained must be suppressed. We therefore reverse the denial of the defendant's motion to suppress and remand.

*Reversed and remanded.*

SOUTER, J., did not sit; the others concurred.