Rockingham
No. 97-073

## THE STATE OF NEW HAMPSHIRE

v.

## GERALD GOTSCH

October 8, 1998

*Philip T. McLaughlin*, attorney general (*Joseph N. Laplante*, assistant attorney general, and *John P. Kacavas*, assistant attorney general, on the brief, and *Mr. Laplante* orally), for the State.

*John P. Newman*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Gerald Gotsch, was convicted of second degree murder, *see* RSA 630:1-b (1996), after a jury trial in Superior Court (*McHugh*, J.). The defendant appeals, arguing that the trial court should have granted his motion to suppress the statements and physical evidence he gave to the New Hampshire police. We affirm.

The defendant lived with his brother, John Gotsch, Jr., in Londonderry. In July 1995, while his brother and his family were on

vacation, the defendant's father, Johann Gotsch, stayed with the defendant at John Gotsch's Londonderry home. When John Gotsch returned home on July 25, 1995, he discovered that the defendant and his father were both missing and notified the Londonderry police. The following day, police discovered Johann Gotsch's body buried in leaves behind John Gotsch's home.

Based on information given to them by John Gotsch, the New Hampshire State Police and Londonderry police suspected that the defendant was involved in his father's death. They issued bulletins to other police departments requesting that they attempt to locate the defendant and, if successful, that they notify New Hampshire authorities. On July 27, 1995, at 12:55 p.m., two police officers in Poughkeepsie, New York, where the defendant's former wife re-sided, spotted the defendant. The officers arrested him and trans-ported him to the Poughkeepsie Police Department. The Poughkeepsie police brought the defendant to an interview room, where the defendant made some spontaneous statements. The defendant complained that he felt uncomfortable in the interview room, so the police moved him into a different room in the department's juvenile bureau at approximately 2:55 p.m., where they gave him pizza. This larger, air-conditioned room contained a leather recliner, couch, loveseat, television set, and fan.

The Poughkeepsie police then informed the defendant of his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), which the defendant waived. During police questioning, the defendant confessed to killing his father. The Poughkeepsie police notified New Hampshire authorities of the defendant's statements, and in response, the New Hampshire authorities sent the Poughkeepsie police a warrant for the defendant's arrest. Upon receiving the warrant, the Poughkeepsie police charged the defen-dant as a fugitive from justice.

At approximately 6:30 p.m. on July 27, Detective James Norris of the New Hampshire State Police and Detective Scott Saunders of the Londonderry police arrived at the Poughkeepsie police station. Upon their arrival, the Poughkeepsie police detectives told them that the defendant had waived his *Miranda* rights and confessed to murdering his father.

The Poughkeepsie and New Hampshire detectives entered the room in the juvenile bureau where the defendant was located, and found him lying on the couch watching television. The Poughkeepsie detectives left the room, and the New Hampshire detectives introduced themselves to the defendant, explained that they were investigating his father's death, and asked if they could interview

him and tape-record their conversation. The defendant agreed. After Detectives Norris and Saunders informed the defendant of his *Miranda* rights, which he waived, the defendant again confessed to his father's murder.

The defendant was subsequently charged with two counts of second degree murder. *See* RSA 630:1-b. Prior to trial, the defendant moved to suppress his confession because, *inter alia*, his initial arrest by the Poughkeepsie police was not supported by probable cause. The State conceded that the defendant's initial arrest was not supported by probable cause, and, accordingly, the State agreed to suppress those statements he made to the Poughkeepsie police. The trial court refused to suppress the defendant's statements to the New Hampshire officers, however. The defendant was subsequently convicted of reckless second degree murder, *see* RSA 630:1-b, and sentenced to twenty-seven years to life in prison. This appeal followed.

■ On appeal, the defendant contends that the trial court should have suppressed his statements to the New Hampshire officers as the inadmissible fruit of an unlawful arrest. Although the defendant cites to both the State and Federal Constitutions, *see* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV, we will address the defendant's State constitutional claim first and cite to federal law only to aid in our analysis. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983). Because the Federal Constitution provides no greater protection in this area, *see Brown v. Illinois*, 422 U.S. 590, 602 (1975); *State v. Tapply*, 124 N.H. 318, 326, 470 A.2d 900, 904-05 (1983), we need not undertake a separate federal constitutional analysis.

■ For the defendant's statements to be admissible, we must determine whether "the act of giving the statement was sufficiently a product of the defendant's free will so as to break the causal connection between the illegality and the confession." *State v. Palamia*, 124 N.H. 333, 336, 470 A.2d 906, 908 (1983). In making this determination, we consider the following four factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Id.* at 336-37, 470 A.2d at 908; *Tapply*, 124 N.H. at 326, 470 A.2d at 905; *see Brown v. Illinois*, 422 U.S. at 603-04.

The first factor clearly favors admissibility of the defendant's statements, given that the defendant was twice advised of his

*Miranda* rights. *See Oliver v. United States*, 656 A.2d 1159, 1172-73 (D.C. App. 1995).

As to the temporal proximity between the arrest and the confession, five and one-half hours passed between the defendant's arrest and his statements to the New Hampshire detectives. We agree with the trial court that this is a significant period of time which "reduces the possibility that the defendant's statements were the product of the arrest as opposed to his own free will." *See Oliver*, 656 A.2d at 1173 (confession admissible where three hours passed between illegal arrest and confession). The defendant spent much of that time lying on a couch in an air-conditioned room. Furthermore, although the defendant was in custody, he had minimal contact with the police. *Cf. Taylor v. Alabama*, 457 U.S. 687, 691 (1982) (defendant questioned several times by police, fingerprinted, and subjected to a lineup while in custody); *Bates v. State*, 359 A.2d 106, 111 (Md. Ct. Spec. App. 1976) (defendant interrogated continuously for three to five hours after illegal arrest); *Palamia*, 124 N.H. at 337, 470 A.2d at 908 (defendant held in custody for eighteen hours in three different locations by three different authorities).

As for the third factor, the presence of intervening circumstances, the State points to the improvement of the defendant's conditions of confinement and the interview of the defendant by a different law enforcement agency. Although these intervening circumstances may be less compelling than those in other cases, *cf.*, *e.g.*, *Johnson v. Louisiana*, 406 U.S. 356, 365 (1972) (appearance before magistrate was intervening circumstance); *Oliver*, 656 A.2d at 1172 (private meeting with brother was intervening circumstance), we nevertheless conclude that they are sufficient, in combination with the other three factors, to break the causal chain between the defendant's illegal arrest and his statements to the New Hampshire authorities.

Regarding the final factor, we conclude that the police conduct in the case was not flagrant or purposeful. The Poughkeepsie police were notified that the defendant was a suspect in a homicide, and therefore they had reasonable grounds to detain the defendant for questioning. *Cf. Palamia*, 124 N.H. at 338, 470 A.2d at 909 (police had "*no* basis for suspicion" to arrest defendant); *Commonwealth v. Barnett*, 369 A.2d 1180, 1184 (Pa. 1977) (police arrested defendant "without any apparent justification"). The police arrested the defendant in good faith and did not utilize any improper or deceptive tactics. *See Oliver*, 656 A.2d at 1173; *State v. Bleyl*, 435 A.2d 1349, 1361 (Me. 1981); *State v. Turner*, 394 A.2d 798, 800 (Me. 1978). "Nothing in the conduct of the [Poughkeepsie or New Hampshire] officers manifested the kind of willful or purposeful misconduct that

the exclusionary rule was fashioned to deter." *Bleyl*, 435 A.2d at 1361.

 For the foregoing reasons, we conclude that the trial court properly denied the defendant's motion to suppress.

*Affirmed.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.