Grafton
No. 2004-160

THE STATE OF NEW HAMPSHIRE

v.

ROBERT B. COWLES

Argued: April 20, 2005
Opinion Issued: June 21, 2005

*Kelly A. Ayotte*, attorney general (*Karen E. Huntress*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. The defendant appeals his conviction of operating after having been certified a habitual offender, *see* RSA 262:23 (2004) (amended 2001, 2003), contending that his confession should have been suppressed because it was tainted by his earlier illegal arrest. We affirm.

The Trial Court's (*Burling*, J.) order on the defendant's motion to suppress recites the following facts. On October 1, 2001, Canaan Police Sergeant Samuel Frank saw the defendant operating an all-terrain vehicle (ATV) on Jerusalem Road in Canaan. Because Sergeant Frank knew the defendant to be a certified habitual offender, he gave pursuit, but lost the defendant when he left the road and proceeded onto a trail. Sergeant Frank then went to the defendant's house and informed someone there that he would get a warrant and return to arrest the defendant.

As Sergeant Frank was leaving the defendant's residence, however, he again saw the defendant operating an ATV. Sergeant Frank unsuccessfully pursued him again and tried once more to intercept him at his home. This time, when Sergeant Frank arrived at the defendant's house, he saw the defendant in the mudroom talking on the telephone. Sergeant Frank informed the defendant he was under arrest, entered the mudroom and handcuffed him.

The defendant was taken to the police station, unhandcuffed and booked. After being read his *Miranda* rights, the defendant made incriminating statements. *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The defendant moved to suppress his statements, arguing that Sergeant Frank's warrantless entry into his home violated Part I, Article 19 of the State Constitution, and that his statements were fruits of that unlawful arrest. The trial court agreed that the defendant's arrest was invalid, but did not suppress his subsequent statements. The defendant appeals.

■ "Our review of the superior court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the superior court level in the first instance." *State v. Szczerbiak*, 148 N.H. 352, 354 (2002) (quotation omitted). We have applied the following test under our State Constitution to claims that a confession has been tainted by a prior unlawful arrest:

> For the defendant's statements to be admissible, we must determine whether the act of giving the statement was sufficiently a product of the defendant's free will so as to break the causal connection between the illegality and the confession. In making this determination, we consider the following four factors: (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.

*State v. Gotsch*, 143 N.H. 88, 90 (1998) (quotation and citation omitted), *cert. denied*, 525 U.S. 1164 (1999). The defendant contends that the trial court erred in analyzing these factors.

Before reaching the defendant's contentions, we pause to address the State's implied invitation to adopt the rule of *New York v. Harris*, 495 U.S. 14 (1990). In *Harris*, the United States Supreme Court held that under the Fourth Amendment to the United States Constitution, "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an [unconstitutional] arrest made in the home." *Harris*, 495 U.S. at 21. Employing the reasoning of *Harris*, the State argues that because the defendant's arrest was supported by probable cause, even though it "may have been unlawfully effectuated on the doorstep to his house," his later statements at the police station are admissible.

We need not decide whether to adopt the *Harris* reasoning under our State Constitution because we conclude that even under the attenuation test of *Gotsch*, the defendant's statements are admissible. Thus, we turn now to the *Gotsch* factors.

■The defendant concedes that he was read his *Miranda* rights, but, as he correctly points out, *"Miranda* warnings *per se* do not remove the taint of the illegal · arrest." *State v. Palamia,* 124 N.H. 333, 337 (1983). Nevertheless, the administration of *Miranda* warnings "clearly favors admissibility of the defendant's statements." *State v. Belton,* 150 N.H. 741, 748, *cert. denied,* 125 S. Ct. 674 (2004).

The defendant contends that the second and third factors, temporal proximity and intervening circumstances, weigh in his favor. He estimates that "ten minutes, at most, elapsed between the time of the illegal arrest and [Sergeant] Frank's review of the *Miranda* form at the police station." The defendant does not, however, indicate how much time elapsed between his arrest and his confession. According to Sergeant Frank's testimony, the defendant underwent a booking process after being advised of his *Miranda* rights and before being questioned about operating an ATV that day. We note that although there was no testimony about how long the booking process took, the defendant's trial counsel surmised that the entire elapsed time, including that taken for booking, "couldn't be any more than 45 minutes."

■ Generally, the longer the time between the unlawful arrest and the confession, the more likely the taint has been attenuated, because the passage of "a significant period of time . . . reduces the possibility that the defendant's statements were the product of the arrest as opposed to his own free will." *Gotsch,* 143 N.H. at 91 (quotation omitted). In some cases, however, a lengthy delay may be found to have exacerbated the taint because "[i]f there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest than a short one." *Palamia,* 124 N.H. at 337 (quotation omitted). Thus, as our case law indicates, the span of time, by itself, is not determinative of admissibility. *Compare State v. White,* 119 N.H. 567, 571 (1979) (State failed to establish admissibility of confession made one hour after illegal seizure of defendant) *with Szczerbiak,* 148 N.H. at 356 (unlawful detention did not taint consent to search despite complete temporal proximity). In this case, we conclude that the temporal proximity between the illegal arrest and the confession is essentially a neutral factor in the analysis.

With respect to the third factor, the defendant contends that there were no intervening circumstances, and, as the State does not identify any, we accept the defendant's contention. We note that while the trial court characterized the administration of *Miranda* warnings as an intervening circumstance, we have already considered it as a separate factor and need not address it here.

Finally, we consider the "purpose and flagrancy of the official misconduct," *Gotsch*, 143 N.H. at 90. Sergeant Frank testified that after unsuccessfully attempting to chase the defendant, he heard the defendant head back toward his house on the ATV. Sergeant Frank went to the defendant's house, walked onto an open porch and, from there, could see the defendant through a screen door. He then told the defendant he was under arrest and the defendant, according to Sergeant Frank's testimony, "put his hands up and turned around for me." It was at that point that Sergeant Frank opened the door, stepped into the mudroom and handcuffed the defendant.

█ On these facts, we conclude that the police misconduct was not flagrant. *Cf. Szczerbiak*, 148 N.H. at 357. Sergeant Frank was in hot pursuit of the defendant while he was committing a felony. *See* RSA 262:23; *cf. State v. Ricci*, 144 N.H. 241, 245 (1999). The unlawful intrusion into the defendant's home was minimal: Sergeant Frank saw the defendant through a screen door from an open porch and merely "stepped into the mudroom" after the defendant signaled his acquiescence to being arrested. In addition, Sergeant Frank had probable cause to arrest the defendant, and his conduct had a legitimate purpose.

The defendant nevertheless argues that the trial court failed to give adequate consideration to the fact that the unlawful arrest took place inside his home, an area afforded special constitutional protection. Because our review is *de novo*, we need not decide whether the trial court gave adequate consideration to this fact. We conclude, as explained above, that Sergeant Frank's minimal intrusion inside the defendant's home was for a legitimate purpose and does not constitute flagrant misconduct.

This is a close case, but we conclude that after balancing the *Gotsch* factors, those favoring admissibility outweigh those favoring exclusion. Although only a short time elapsed between the unlawful arrest and the defendant's confession, and no intervening circumstances were present, *Miranda* warnings were given and the police misconduct was not flagrant. Accordingly, we conclude that the taint of the unlawful arrest was purged.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.