**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

In Case No. 2020-0063, <u>State of New Hampshire v. Scott Hilliard</u>, the court on October 29, 2021, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. Following a bench trial, the Circuit Court (<u>Leary</u>, J.) found the defendant, Scott Hilliard, guilty of aggravated driving while intoxicated (DWI), <u>see</u> RSA 265-A:3 (2014), and transporting an alcoholic beverage, <u>see</u> RSA 265-A:44 (2014). The defendant appeals, arguing that the court erred when it found that the taint of his unlawful arrest was purged and admitted the results of his post-arrest blood test. He also argues that because the State first raised its argument that his consent to the blood test purged the taint of the unlawful arrest in its motion to reconsider, the court erred by failing to consider this argument under the plain error standard. We affirm.

I

The following facts and procedural history are taken from the trial transcript or are otherwise established by the record. In August 2019, the Tilton police responded to a call about a "white Cadillac that was driving erratically," "crossing the double yellow line and all over the road." The caller also identified the license plate number, that the car was being driven by a single male with white hair, and that it had pulled into the Ninety Nine restaurant off of Route 140 in Tilton. The police dispatcher used the license plate number to determine that the vehicle was registered to the defendant, Scott Hilliard.

Two officers initially arrived at the Ninety Nine. They observed the defendant's car unoccupied and made contact with the defendant as he was leaving the restaurant with a take-out bag and walking toward the previously identified vehicle. The officers immediately perceived a strong odor of alcohol coming from the defendant, and that he exhibited "tired eyes" and slurred speech. When an officer told the defendant that he smelled of alcohol, the defendant responded, "yeah, I'm sorry. I really screwed up." One of the officers offered to put the defendant's take-out bag in the car for him, and the defendant unlocked the passenger door to the car. Upon entering the car, the officer noticed a tumbler containing ice, lemon, and "partially consumed liquid," which the defendant admitted contained vodka and soda water.

Thereafter, Sergeant Kydd-Keeler arrived at the scene. He spoke with the defendant, who claimed that he had not driven to the restaurant but could not explain how he got there. The defendant agreed to undergo several field sobriety tests, which he failed. He then consented to perform a portable breath test. The breath test revealed that the defendant had a blood-alcohol concentration over 0.16, and the defendant was placed under arrest for aggravated DWI. The sergeant did not seek a warrant before making the arrest.

Immediately thereafter, the sergeant took the defendant to the Tilton police station where he read the defendant his Miranda rights and lines one through six of the administrative license suspension (ALS) form, which explained the defendant's right to refuse consent to one or more tests to determine his blood-alcohol concentration. The defendant verbally acknowledged these rights, signed the ALS form, and consented to a blood test.

The defendant moved to suppress the evidence following his arrest, which he argued was unlawful. Objecting to the defendant's motion, the State argued only that the defendant's arrest was lawful. The court proceeded with the motion to suppress and the trial simultaneously. On December 19, 2019, after the first day of trial, the court found that "there was probable cause for [the defendant's] arrest, but . . . it was an unlawful arrest because [the sergeant] did not make even the attempt to get a warrant." Thus, the court granted the defendant's motion to suppress "as to any evidence acquired subsequent to the arrest." The State had not yet rested at the conclusion of the first day, and the trial was scheduled to resume on January 14, 2020.

The State moved for reconsideration on December 30, 2019, arguing, for the first time, that the defendant's consent purged the taint of his unlawful arrest. On January 10, 2020, the trial court ruled that this argument "appear[ed] to be a valid issue to be considered at trial" and instructed the parties to "be prepared to litigate its merits" when the trial resumed on January 14.

On the second day of trial, the defendant argued that the court should not consider whether his consent purged the taint of the unlawful arrest because the State failed to raise this issue in its objection to the defendant's motion to suppress. The defendant argued that if the court were to consider the new issue it could do so only under the plain error standard "because no contemporaneous objection was made" and "[t]here's no other vehicle through which to have this evidence considered." The State countered that it could not have made its argument about consent purging the taint "until there[] [was] a determination on whether or not the arrest [was] actually a lawful arrest or [was] an unlawful arrest." The court agreed with the State, concluding that its decision that the arrest was unlawful was "a condition precedent to even [the State] raising this issue" and relying on the fact that the State had not yet rested.

2

After hearing the parties' arguments and evidence, the court found that the defendant's consent purged the taint of the unlawful arrest and admitted the blood test results into evidence.  The court found that there was probable cause for the arrest.  Further, it noted "[t]here was no question that any reasonable magistrate in this State . . . would have issued a warrant." Although the court found the arrest was unlawful, absent an attempt to secure a warrant, it found "there was [not] any kind of flagrancy at all," and instead commended the sergeant for his "very professional" conduct.

Following the court's ruling that the circumstances of the defendant's consent purged the taint of the unlawful arrest, each party rested and the court found the defendant guilty of aggravated DWI, see RSA 265-A:3, and transporting an alcoholic beverage, see RSA 265-A:44.  This appeal followed.

II

On appeal, the defendant argues that the trial court erred when it found that the State demonstrated that the taint of his unlawful arrest was purged by the circumstances of his consent and admitted the results of his post-arrest blood test.  Before reaching the merits of this argument, we first address whether the trial court was required to consider this argument under the plain error standard.  Because the State first raised this argument in its motion to reconsider, the defendant contends that the court "could not have overlooked or misapprehended" that issue, and thus "plain error was the State's sole procedural mechanism" to make this argument.  We disagree.

The trial court ruled that the defendant's arrest was unlawful during the first day of trial.  The State had not yet rested when it filed its motion to reconsider on December 30, where it argued, for the first time, that the defendant's consent purged the taint of his unlawful arrest.  The trial court found that this argument was a valid issue to be considered, and put the parties on notice that they should be prepared to litigate its merits when trial resumed in January.  Thus, the issue was before the trial court, with opportunity for the parties to address it, during the ongoing trial.

The defendant's argument that the court erred by failing to consider the State's argument under the plain error standard is premised on the notion that the court had no discretion to consider the argument, in the first instance, because it was first raised in a motion to reconsider.  However, when a party first raises an issue to the trial court in a motion to reconsider, the court has discretion to consider the issue and to re-open the record and allow the parties to present evidence.  See Smith v. Shepard, 144 N.H. 262, 265 (1999).  We review the court's decision to consider an argument first raised in a motion to reconsider for an unsustainable exercise of discretion.  Mortgage Specialists v. Davey, 153 N.H. 764, 786 (2006); see also State v. Plantamuro, 171 N.H. 253, 255 (2018).  Because the court has discretion to consider arguments first

raised in a motion to reconsider, we reject the premise of the defendant's argument. See Smith, 144 N.H. at 265. Having rejected the premise upon which the defendant's argument relies, we, therefore, reject the defendant's argument. See State v. Batista-Salva, 171 N.H. 818, 824 (2019) ("Given our conclusions above, we need not consider the defendant's other arguments, having rejected the premise on which they rely.").

To the extent the defendant argues that the court unsustainably exercised its discretion by considering the State's new argument, we are unpersuaded. To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Plantamuro, 171 N.H. at 255. In applying our unsustainable exercise of discretion standard of review, we determine only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made. Id. Our task is not to determine whether we would have found differently; it is only to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it. Id. The defendant bears the burden of demonstrating that the trial court unsustainably exercised its discretion. Id.

On this record we conclude that a reasonable person could have decided as the trial court did in this case. See id. The defendant, therefore, has not persuaded us that the court unsustainably exercised its discretion when it considered the State's argument, and he has not demonstrated reversible error. See id.; Gallo v. Traina, 166 N.H. 737, 740 (2014). We, therefore, turn to the merits of the defendant's argument that the State failed to demonstrate that the taint of the unlawful arrest was purged by the circumstances of his consent.

"When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous." State v. Hight, 146 N.H. 746, 748 (2001). "Our review of the trial court's legal conclusions, however, is de novo." Id. For purposes of this analysis we assume, without deciding, that the defendant's arrest was unlawful. When consent to search is the product of an unlawful detention, such consent is "tainted" by the illegality of the detention. Id. at 749 (citing Florida v. Royer, 460 U.S. 491, 507-08 (1983)).

Rather than adopting a per se rule that would suppress all evidence obtained from a consensual search following an unlawful detention, we adopted the following test in Hight: "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. (quotation omitted). We require the government to demonstrate that any taint of an illegal search or seizure has been purged or attenuated not only because we are concerned that

4

the illegal seizure may affect the voluntariness of the defendant's consent, but also to effectuate the purpose of the exclusionary rule. Id.; see also State v. Beauchesne, 151 N.H. 803, 818 (2005) ("The purpose of the exclusionary rule is . . . to deter police misconduct, to redress the injury to the privacy of the victim of the unlawful search or seizure and to safeguard compliance with State constitutional protections.").

To determine whether the State has demonstrated that the taint of an unlawful arrest was purged, such that the evidence obtained as a result of a subsequent search should not be suppressed, we consider: (1) the temporal proximity between the unlawful arrest and the consent to search; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Hight, 146 N.H. at 750. The defendant asserts that the three Hight factors all weigh in his favor and support the conclusion that the State failed to purge the taint of the unlawful arrest.

The defendant first argues that there was temporal proximity between his unlawful arrest and his subsequent consent and, thus, this factor weighs in favor of suppression. We have explained that there is "absolute temporal proximity" between an unlawful detention and the consent when the defendant's consent is given while he or she is unlawfully detained. Hight, 146 N.H. at 750; cf. State v. Cowles, 152 N.H. 369, 372 (2005) (explaining that, "[g]enerally, the longer the time between the unlawful arrest and the confession, the more likely the taint has been attenuated," but in some cases a lengthy delay may be found to have exacerbated the taint). Where it exists, "absolute temporal proximity" weighs against a conclusion that the taint of the unlawful arrest was purged because of the risk that the defendant felt some compulsion to consent, given that "he believed he was still under the lawful authority of the officer." Hight, 146 N.H. at 750; see also State v. Szczerbiak, 148 N.H. 352, 356 (2002); Cowles, 152 N.H. at 372. Here, as in Hight and Szczerbiak, there was "absolute temporal proximity" because the defendant gave his consent to the blood test while in custody, following his unlawful arrest. See Hight, 146 N.H. at 750; Szczerbiak, 148 N.H. at 356.

Next, the defendant argues there were no intervening circumstances. In Hight, we explained that an "officer informing the defendant of his right to refuse consent" was an example of intervening circumstances "that would purge the taint of the unlawful detention." Hight, 146 N.H. at 750. Those circumstances are present here — the defendant consented to the blood test after the sergeant read the ALS form verbatim, which explained the defendant's right to refuse consent, and the defendant acknowledged that he understood his rights, both verbally and by signing the form. See State v. Barkus, 152 N.H. 701, 707 (2005) (declining to hold that a breath test, otherwise lawfully administered, was inadmissible "simply because it follow[ed] an earlier Miranda

5

violation" and instead concluding that defendant's election to proceed with a breath test after being informed of her right to refuse, constituted "an intervening act").

The defendant argues that being advised of his right to refuse consent to the blood test, pursuant to the ALS form, does not constitute intervening circumstances. For support, he relies on Cowles, a tainted-confession case, and our case law explaining that Miranda warnings do not per se purge the taint. See, e.g., State v. Palamia, 124 N.H. 333, 337 (1983). However, the defendant's reliance on Cowles is misplaced.

Cowles, unlike this case, involved a challenge to the admissibility of a defendant's confession following his unlawful arrest. Cowles, 152 N.H. at 370. Although similar to tainted-consent-search cases, in tainted-confession cases we use four factors (the Gotsch factors) to determine whether the taint of the primary illegality was purged, such that the confession should not be suppressed. Id. at 371; see State v. Gotsch, 143 N.H. 88, 90 (1998). Three of the factors are the same as the Hight factors, but we also consider the administration of Miranda warnings as a separate, additional factor. See Gotsch, 143 N.H. at 90.

The defendant, in comparing his case to Cowles, misinterprets our analysis of the four Gotsch factors. He claims that in Cowles we "considered no intervening circumstances other than the Miranda warnings." (Emphasis added.) However, in Cowles we accepted the defendant's contention that there were no intervening circumstances, noting that the State failed to identify any. Cowles, 152 N.H. at 372. We then explained that although "the trial court characterized the administration of Miranda warnings as an intervening circumstance, we [had] already considered it as a separate factor." Id. In other words, Miranda warnings, in the context of a tainted-confession case, do not themselves constitute intervening circumstances and are instead a separate factor in the analysis of whether the State purged the taint of the primary illegality. Because the existence of Miranda warnings and intervening circumstances are separate inquiries, we are not persuaded that our analysis of Miranda warnings has any bearing on whether an intervening circumstance existed here.

The defendant also argues that being advised of his right to refuse consent to the blood test, by virtue of the officer reading the ALS form, cannot constitute intervening circumstances because refusing consent to the blood test carries "the penalty of losing his license, which, is only enabled by virtue of making the arrest." This consequence of refusal, the defendant contends, "coerce[s] the arrestee into taking a blood or breath test." Thus, unlike Miranda warnings, the defendant maintains that being advised of his rights pursuant to the ALS form is not a strong "indication of [a] free and unconstrained choice."

6

Although the defendant's argument appears to cast doubt upon the freedom of his choice to submit to the blood test, we do not read the defendant's brief as having separately challenged the voluntariness of his consent. We have explained that "evidence obtained by the purported consent should be held admissible only if it is determined that the consent was both voluntary and not an exploitation of the prior illegality"; however, the tests for voluntariness and the tainted-fruits tests are not the same. Hight, 146 N.H. at 750 (quotation omitted). We, therefore, need not address the voluntariness of his consent. See id.; State v. Blackmer, 149 N.H. 47, 48 (2003) (declining to review any issue not raised in the trial court and not sufficiently developed for appellate review).

It is settled law that a driver arrested for DWI has no constitutional right to refuse to provide a sample for a blood-alcohol test. State v. Cormier, 127 N.H. 253, 257 (1985). Instead, a defendant's refusal to provide a blood sample is "the exercise of a legal right provided by the legislature." Id. A DWI defendant, therefore, has a legal power to refuse to provide a sample that the State could constitutionally demand, and thereby to suppress probative evidence. Id. at 257-58. Thus, the right to refuse is an option to suppress more probative evidence in favor of less probative evidence. Id. at 258.

This right is not provided with "no strings attached," and indeed carries two consequences: (1) the imposition of a civil penalty in the form of revocation of a driver's license for as long as one year; and (2) that a trial court may allow the use of the defendant's refusal as evidence against him in any civil action or criminal prosecution for acts committed while operating under the influence. Id. The fact that the exercise of this right carries potentially undesirable consequences may well incentivize defendants to consent, as the law was intended to do. However, we do not conclude that the defendant's decision not to exercise this right, and thereby suppress probative evidence, is "coerce[d]" as the defendant contends.

As we have explained, an officer informing the defendant of his right to refuse consent constitutes one example of intervening circumstances. Hight, 146 N.H. at 750; see State v. Washburn, 170 N.H. 688, 695 (2018) (concluding that intervening circumstances existed where the officer "review[ed] the consent-to-search forms with the defendant and [explained] that her consent was optional, and that if she signed the form, she could revoke consent at any time," which broke "any causal connection" between the prior illegality and the defendant's consent). We conclude that the reading of the ALS form advising the defendant of his right to refuse consent, the exercise of which results in the suppression of probative evidence, constitutes intervening circumstances. See Hight, 146 N.H. at 750. Here, because the sergeant informed the defendant of

7

his right to refuse consent, by virtue of reading the ALS form "verbatim," and the defendant acknowledged his understanding of the same, intervening circumstances existed.  See id.

Finally, the defendant maintains that the official misconduct here was flagrant.  As examples of flagrant misconduct, we have pointed to arrests made without any apparent justification, as a part of a dragnet operation, or upon a pretext.  State v. Miller, 159 N.H. 125, 133 (2009); see 6 Wayne R. LaFave, Search and Seizure § 11.4(b), at 391 (6th ed. 2004)); Hight, 146 N.H. at 749, 751 (concluding officer's misconduct was flagrant when he expanded the scope of the stop absent a reasonable and articulable suspicion of criminal activity to justify detaining the defendant further and sought consent to search the defendant's car and person without informing the defendant of his right to refuse consent).

In support of his argument that the official misconduct here was flagrant, the defendant draws a comparison to Cowles.  The defendant asserts that the present case is distinguishable from Cowles, where we concluded that the misconduct was not flagrant, because "unlike the defendant in Cowles," he "never invited [the sergeant] to skip the warrant process" and he "submitted to the unlawful arrest that he was subjected to because he would have been charged with resisting arrest had he done otherwise."

Cowles involved an officer's warrantless arrest of a defendant in his home, after the officer witnessed the defendant commit a felony and attempted to pursue him.  Cowles, 152 N.H. at 370, 373.  The officer saw the defendant in his home, through a screen door, and informed the defendant that he was under arrest; the defendant signaled his acquiescence to being arrested, and the officer stepped into the home to arrest the defendant.  Id. at 373.  We concluded that the police misconduct was not flagrant because the officer was in hot pursuit, the unlawful intrusion was "minimal," the defendant signaled his acquiescence, the officer had probable cause to arrest the defendant, and his conduct had a legitimate purpose.  Id.

Here, the trial court found that there was reasonable suspicion to stop the defendant and that the officers "did a perfect investigation," including the administration of field sobriety tests.  The court also found that there was probable cause for the arrest and that any reasonable magistrate would have issued a warrant in this case.  After arresting the defendant, the sergeant informed the defendant of his right to refuse consent to the blood test, as stated in the ALS form, and the defendant acknowledged he understood his rights and consented to the blood test.  Although the court found that the arrest was unlawful absent an attempt to secure a warrant, it found no flagrancy on the part of the officers.  Under these circumstances, we disagree with the defendant that the sergeant's misconduct was flagrant.   See id.; cf. Hight, 146 N.H. at 751 (concluding the official misconduct was flagrant).

8

Our review of all three <u>Hight</u> factors reveals that the State satisfied its burden of establishing that the circumstances of the defendant's consent to the blood test purged the taint of his unlawful arrest.  <u>Cf</u>. <u>Szczerbiak</u>, 148 N.H. at 357 (concluding that the State purged the taint of the unlawful detention where only one factor — the lack of "flagrancy" on the part of the officers — weighed in favor of concluding the consent purged the taint of the unlawful detention).  Accordingly, it was not error for the court to admit the results of his blood test.

<u>Affirmed</u>.


BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**