Keene District Court
No. 99-576

THE STATE OF NEW HAMPSHIRE

v.

DORIAN HIGHT

September 6, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Law Office of Joshua Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the defendant.

NADEAU, J. The defendant, Dorian Hight, appeals his conviction for possession of a controlled drug in violation of RSA 318-B:2 (1995) after a bench trial before the Keene District Court (*Tenney, J.*). The defendant challenges the trial court's denial of his motion to suppress evidence obtained during a consent search conducted following a motor vehicle traffic stop. We reverse and remand.

The following facts are undisputed. At 8:40 p.m. on the evening of May 9, 1999, the defendant, an African-American male, was pulled over by an officer of the Chesterfield Police Department for going 47 MPH in a 35 MPH zone and for having a defective taillight. The defendant was accompanied in the vehicle by two Caucasian passengers.

Upon approaching the defendant's vehicle, the officer asked the defendant to state his place of origin and destination. He responded that he had just left Boston and was en route to Landmark College in Vermont. The officer asked the defendant to produce his driver's license and automobile registration, which he did. After determining that the defendant's license and registration were valid, the officer returned to the defendant and asked him to step out of the vehicle to answer some questions. At this time, the officer still had possession of the defendant's license and registration.

The officer again asked the defendant to state his place of origin and his destination. The defendant again responded that he had come from Boston, where he and his passengers had been "hanging out," and that he was going to Vermont. The officer told the defendant that he thought it was a long way to drive just to "hang out." The defendant responded that they had also gone to a "frat party" while in Boston.

The officer, indicating that he was concerned the defendant had picked up drugs in Boston, asked him for permission to search the vehicle for drugs. The defendant consented to the search, which yielded no contraband. The officer then asked and was given

permission to pat the defendant down for weapons and to search his person and his wallet for drugs. The officer found a container that held a small amount of marijuana in the defendant's back pocket. He also found a package of rolling papers in the defendant's wallet. The two passengers were not searched. Subsequently, the officer arrested the defendant for possession of a controlled drug and returned the defendant's license and registration. The defendant was later convicted and appealed.

On appeal, the defendant argues that the officer unlawfully detained him longer than necessary to write a traffic ticket, and, therefore, his subsequent consent to search was "tainted" by the unlawful detention. We address the defendant's claims first under the State Constitution. *See State v. Ball*, 124 N.H. 226, 231 (1983). With respect to the lawfulness of an investigative stop, the State Constitution is at least as protective as the Federal Constitution. *See State v. Wallace*, 146 N.H. 146, 148, (2001). Therefore, we need not engage in a separate federal analysis and look to federal cases for guidance only. *See State v. Farrell*, 145 N.H. 733, 736 (2001). When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous. *See Wallace*, 146 N.H. at 148. Our review of the trial court's legal conclusions, however, is *de novo*. *See id.*

"In order for a police officer to undertake an investigatory stop, the officer must have a reasonable suspicion — based on specific, articulable facts taken together with rational inferences from those facts — that the particular person stopped has been, is, or is about to be, engaged in criminal activity." *Id.* (quotation omitted); *see also Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). We have applied the *Terry* standard to motor vehicle stops. *See State v. Pellicci*, 133 N.H. 523, 528-29 (1990).

█ There is no dispute that the officer's stop of the defendant for speeding and a broken taillight was a lawful investigatory stop. We have previously held, however, that the scope of an investigative stop "must be carefully tailored to its underlying justification[,] must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Wong*, 138 N.H. 56, 63 (1993) (quotation and ellipsis omitted). "[A]ny expansion of the scope of [a motor vehicle] stop to include investigation of other suspected illegal activity is [constitutionally] permissible . . . only if the officer has a reasonable and articulable suspicion that other criminal

activity is afoot." Annotation, *Permissibility Under Fourth Amendment of Detention of Motorist by Police, Following Lawful Stop for Traffic Offense, to Investigate Matters Not Related to Offense*, 118 A.L.R. FED 567, 573 (1994); *see also* 4 W. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 9.2(f), at 65 (3d ed. 1996).

The State concedes that the officer did not have a reasonable and articulable suspicion of other criminal activity which would justify detaining the defendant beyond the time necessary to check the defendant's license and registration. The question before us is what effect, if any, did the defendant's continued and unlawful detention have on his subsequent consent to search his vehicle and his person.

■ We have not yet had occasion to consider this issue. The United States Supreme Court, however, has expressly held that when consent to search is the product of an unlawful detention, such consent is "tainted" by the illegality of the detention. *See Florida v. Royer*, 460 U.S. 491, 507-08 (1983). Although *Royer* did not involve a motor vehicle stop, we agree with Justice Stevens that when deciding the validity of consent that is the product of an unlawful detention during a motor vehicle stop, "[t]he proper disposition follows as an application of [the] well-settled law [articulated in *Royer*]." *Ohio v. Robinette*, 519 U.S. 33, 51 (1996) (*Stevens, J.*, dissenting).

■ Rather than adopting a *per se* rule suppressing evidence obtained during a consent search that stems from an unlawful detention, however, we ask "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. Cobb*, 143 N.H. 638, 650 (1999) (quotation omitted). "We require the government to demonstrate that any taint of an illegal search or seizure has been purged or attenuated not only because we are concerned that the illegal seizure may affect the voluntariness of the defendant's consent, but also to effectuate the purpose of the exclusionary rule." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1054 (10th Cir. 1994). "The [exclusionary] rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Id.* (quotation omitted).

■ When determining whether the State has purged the taint of an unlawful detention followed by a consent to search, we find instructive the following factors considered relevant by the United States Supreme Court: (1) "the temporal proximity between the police illegality and the consent to search"; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the official misconduct." *Id.* (citing *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975)).

■ These factors should not be confused with the factors we consider to determine whether consent is voluntary. *See, e.g., State v. Sawyer*, 145 N.H. 704, 706-07 (2001).

> While there is a sufficient overlap of the voluntariness and [the tainted] fruits tests that often a proper result may be reached by using either one independently, it is extremely important to understand that (i) the two tests are not identical, and (ii) consequently the evidence obtained by the purported consent should be held admissible only if it is determined that the consent was both voluntary and not an exploitation of the prior illegality.

*Melendez-Garcia*, 28 F.3d at 1054-55.

■ We now turn to the three factors as applied to this case. First, there is absolute temporal proximity between the unlawful detention and the defendant's consent since the defendant gave consent *while* he was unlawfully detained.

■ Second, there were no intervening circumstances, such as the officer informing the defendant of his right to refuse consent, that would purge the taint of the unlawful detention and support a conclusion that the consent was an "act of free will." *State v. Pinder*, 126 N.H. 220, 225 (1985); *see also United States v. McGill*, 125 F.3d 642, 644 (8th Cir. 1997) (concluding that the defendant's understanding of his right to refuse consent was intervening circumstance), *cert. denied*, 522 U.S. 1141 (1998). In fact, the circumstances in this case strongly suggest that the defendant's consent was not an act of free will independent of the unlawful detention. Given the seamless transition from the valid traffic stop to the unlawful detention and subsequent consent, there is a serious risk that the defendant felt some compulsion to consent because he believed he was still under the lawful authority of the officer at the time the officer requested his consent. The officer's

continued possession of the defendant's license and registration also makes it less likely that the defendant's consent was an act of free will. Finally, the officer — a Caucasian — had just accused the defendant — an African-American male in his twenties — of drug trafficking and had not informed the defendant that he had a right to refuse to consent. Given these numerous factors which suggest the absence of free will, we find the lack of any intervening circumstances all the more compelling.

■ Regarding the third factor, we are troubled by the purpose and flagrancy of the official misconduct in this case. It is disconcerting that the officer sought consent to search not only the defendant's car, but his person, based upon such innocuous facts as he had driven to Boston with a purpose to "hang out," he had attended a "frat party" there and he was returning to college in Vermont.

Although consent searches have long been an acceptable method of law enforcement, we have previously admonished that it is good policy for police officers to advise persons that they have a right to refuse to consent to a warrantless search. *See State v. Osborne*, 119 N.H. 427, 433 (1979). The failure of this officer to inform the defendant that he could refuse to consent and the absence of any reasonable basis for the officer to suspect the defendant of criminal activity gives rise to the *appearance*, even if not the reality, that the officer's purpose was to engage in a "fishing expedition" for incriminating evidence by exploiting the defendant's ignorance of his constitutional rights. *See State v. Palamia*, 124 N.H. 333, 338 (1983). That the officer was Caucasian, the defendant was African-American and the officer's suspicions did not extend to the defendant's two Caucasian passengers is also troublesome.

We conclude, therefore, that the State has failed to purge the taint of the defendant's unlawful detention and that the evidence procured through the defendant's consent should have been suppressed. Accordingly, we conclude that the trial court's denial of the defendant's motion to suppress was erroneous. We need not address the voluntariness of the defendant's consent.

*Reversed and remanded.*

BROCK, C.J., and BRODERICK, DALIANIS and DUGGAN, JJ., concurred.