Concord District Court
No. 2003-152

THE STATE OF NEW HAMPSHIRE

v.

DAVID RENO

Argued: November 12, 2003
Opinion Issued: January 26, 2004

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

NADEAU, J. The defendant, David Reno, appeals his conviction for operating after suspension. *See* RSA 263:64 (1993) (amended 2002). He challenges an order of the Concord District Court (*Sullivan*, J.) denying his motion to suppress evidence obtained from the stop of his vehicle on February 14, 2002. We affirm.

The record supports the following facts. On the evening of February 14, 2002, a Concord police dispatcher relayed a report of a possible driving while intoxicated offense. The dispatcher stated that the vehicle, with New Hampshire license plate 1406184, had just left Wal-Mart and that the subject apparently smelled of alcohol. The dispatcher stated that the given license number "comes back on an '88 Mercury Cougar, color (unintelligible)." After relaying the direction the subject had reportedly taken out of Wal-Mart, the dispatcher stated: "New Hampshire 1406184, and it should be operated by a David Reno. I just checked; he is under suspension." After hearing the dispatch, Concord Police Officer Miguel Cebollero saw the defendant's vehicle pass him and later stopped the defendant for operating after suspension.

Before the trial court, the defendant moved to suppress evidence obtained from the stop of his vehicle, arguing that the stop was made

without reasonable suspicion that he had committed a crime. *See, e.g.,* *State v. Hight*, 146 N.H. 746, 748 (2001) (officer making investigatory stop must have reasonable suspicion that the "person stopped has been, is, or is about to be, engaged in criminal activity" (quotation omitted)). The trial court denied the motion, finding *State v. Richter*, 145 N.H. 640 (2000), controlling. On appeal, the defendant argues that "[b]ecause *Richter* is inapplicable, and the anonymous tip Cebollero relied upon to effect the stop was legally insufficient, the stop violated Reno's [State and federal] constitutional right[s] to be free from unreasonable searches and seizures." We first address the defendant's claims under our State Constitution, and cite federal opinions for guidance only. *See State v. Ball*, 124 N.H. 226, 231, 233 (1983).

In *Richter*, we held that when an officer observes a vehicle that is determined to be registered to an owner with a suspended license, the officer, having observed nothing to indicate the driver is not the owner, may reasonably infer that the driver is the owner. *Richter*, 145 N.H. at 641-42. We further held that because "[s]uch an inference [gives] rise to a reasonable suspicion that the driver [is] committing a violation of RSA 263:64," the officer may "initiate[] a traffic stop to investigate whether the [driver is] driving his vehicle in violation of the law." *Id.* at 642.

The defendant argues that this case differs from *Richter* because the officer did not know that the registered owner of the car was under suspension. Rather, the defendant argues, the officer knew that a person named David Reno had a suspended license, but did not know whether Reno was the registered owner of the car. The trial court, however, found that Cebollero "learned that the registered owner was under suspension." "We defer to the factual findings of the trial court on the events leading up to the stop, unless those findings are clearly erroneous . . . ." *Id.* at 641 (quotation omitted). The validity of such stops, however, is a matter of *de novo* review. *See id.*

The dispatcher immediately preceded the disclosure of Reno's name with a recitation of the vehicle's plate number. The trial court could have reasonably inferred that the dispatcher had run the plate number and discovered that the car was registered to David Reno. Based upon the dispatcher's statement, "I just checked; [Reno] is under suspension," the court could also have reasonably inferred that the dispatcher then ran a check on Reno and determined that he had a suspended license. Thus, the court's conclusion that Cebollero knew the registered owner was under suspension is not clearly erroneous, and, under *Richter*, Cebollero had sufficient information to support a reasonable suspicion that the defendant was committing a crime. *See id.* at 641-42.

◼ We need not address the merits of the defendant's arguments regarding the sufficiency of the anonymous tip, because we disagree with the defendant's assertion that "[s]ince the information Cebollero had before stopping Reno's car was based solely on an anonymous tip from an informant, the law governing anonymous tips applies." As noted above, the trial court could reasonably have found that the information regarding the registered owner of the car and his suspension came not from the informant but from the dispatcher's check of the vehicle's plate number. We recognized in *Richter* the authority of police to run computer checks of passing vehicle licenses, without suspicion of criminal conduct. *Id.* at 640-41. Such checks are not searches under either the Fourth Amendment to the Federal Constitution or Part I, Article 19 of our State Constitution. *Id.* at 641. Thus, the officer lawfully obtained all the information needed to make a valid stop without relying on the informant. Because the Federal Constitution affords no greater protection to the defendant under these circumstances than does our State Constitution, *see Richter*, 145 N.H. at 641; *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999) (no privacy interest in license plate number), we reach the same result under the Federal Constitution as under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, concurred.