NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2016-0518


THE STATE OF NEW HAMPSHIRE

v.

DARLENE WASHBURN

Argued: November 14, 2017
Opinion Issued: April 13, 2018


Gordon J. MacDonald, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Harry N. Starbranch, of Portsmouth, on the brief and orally, for the defendant.


HICKS, J. Following a jury trial, the defendant, Darlene Washburn, was convicted of possession of a schedule II controlled drug. See RSA 318-B:2 (2011) (amended 2013, 2015, 2016). On appeal, she argues that the Trial Court (Houran, J.) erred when it: (1) denied her motion to suppress evidence seized in warrantless searches of her purse, vehicle, and home; and (2) instructed the jury on a lesser-included offense that did not ensure jury unanimity and failed to protect her against double jeopardy. We affirm.

The issues raised by the defendant address two rulings made by the trial court at different stages of her prosecution: one ruling addressed the defendant's motion to suppress, and the other addressed her motion for judgment notwithstanding the verdict (JNOV). To review the trial court's suppression ruling, we consider the findings contained in its order and the record of the suppression hearing as summarized below. See, e.g., State v. Morrill, 169 N.H. 709, 711 (2017).

In August 2013, the New Hampshire Attorney General's Drug Task Force (task force) arranged for Donald Packer, who was in police custody as the result of a drug investigation, to contact the defendant and offer to sell Percocet to her. Packer telephoned her and she agreed to meet him at their "usual place" in Somersworth to purchase 100 tablets of 30 mg Percocet at $24 per tablet. Detective Plummer, who was assigned to the task force, then drove to the defendant's home and observed her leave and travel toward Somersworth. Shortly thereafter, a marked Somersworth police cruiser stopped the defendant. An unmarked Somersworth police van pulled in front of the defendant's car and Plummer pulled his unmarked vehicle in behind her car.

Plummer approached the defendant's car and asked her if she would be willing to speak with him. Because he was part of an ongoing undercover operation at that time, when Plummer was out of his vehicle, he wore a balaclava to protect his identity. The defendant agreed to speak with him, exited her vehicle, and sat in the passenger's seat of his vehicle. While in his vehicle, Plummer removed his balaclava. Another officer was already seated in the back seat of Plummer's vehicle. After preliminary discussion during which the defendant lied about the purpose of her trip to Somersworth, Plummer advised the defendant that he knew about her arranged meeting with Packer. When Plummer asked the defendant how much money she was carrying, she reported that she had $2400, an amount consistent with the agreed-upon price for the Percocet.

Plummer then asked the defendant whether she would agree to sign a consent-to-search form for her vehicle and her purse. He advised her that her consent was voluntary, that she did not have to sign the form, and that she could stop the search at any time. The defendant agreed orally to the searches and then signed the form. Although the form listed "premises," "automobile," and "person" as search options, only the automobile option was circled.

During the search of the defendant's purse, Plummer found $2400. No evidence was obtained as a result of the search of her car. Plummer then asked the defendant what, if anything, was at her residence. She told him that there was no money there, only her prescription. At Plummer's request, the defendant then agreed to a search of her home and executed a second consent-to-search form. After arriving at her house, the defendant led the police

2

upstairs to her bedroom, where they seized cash and narcotics. The defendant was then placed under arrest and charged with possession of a controlled drug, possession with intent to sell a controlled drug, and attempted possession with intent to sell a controlled drug. See RSA 318-B:2.

Following her arrest, the defendant filed two motions to suppress: the first sought to suppress "all evidence collected from the warrantless search of her purse, automobile and residence" and the second sought to "suppress all evidence collected both, direct and derivative, from [her] unwarned interrogation." She argued that the statements she made after exiting her vehicle were the product of an unwarned custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and that the searches of her vehicle, purse, and home were illegal because her consent was either the product of her unlawful detention or otherwise involuntary. See State v. Socci, 166 N.H. 464, 473 (2014) (evidence obtained by consent is admissible only if consent is both voluntary and not an exploitation of prior illegality).

The trial court ruled that the defendant was in custody by the time Plummer escorted her to his vehicle, and suppressed any incriminating statements that she made after that point. The court then considered whether her consent to search her purse, car, and home was valid. The court rejected her argument that she was unlawfully detained and found that her consent to the searches was voluntary. The court also determined that "any taint of the unwarned custodial interrogation had been purged" at the time that she consented to the searches.

Following a jury trial, the defendant was acquitted of the charged offenses, but convicted of a lesser-included offense of possession of the controlled drug oxycodone.

On appeal, the defendant cites both the State and Federal Constitutions in support of her argument that the trial court erred when it denied her motion to suppress evidence seized in the warrantless searches of her purse, vehicle, and home. See N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. She contends that her consent to search her purse was not freely given, but "was obtained by duress and under coercion." She further argues that because the initial search of her purse was illegal, it tainted the subsequent search of her vehicle and her home.

When we review a trial court's ruling on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. State v. McInnis, 169 N.H. 565, 569 (2017). Our review of the trial court's legal conclusions is de novo. Id. We first address the issues under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

3

Part I, Article 19 of the New Hampshire Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. A warrantless search is per se unreasonable and invalid unless it falls within one of a few recognized exceptions. State v. Francis, 167 N.H. 598, 602 (2015). Voluntary consent free of duress and coercion is one of these exceptions. Socci, 166 N.H. at 473. The burden is on the State to prove, by a preponderance of the evidence, that the consent was free, knowing, and voluntary. Id. Whether the consent was voluntary or was the product of coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. State v. McGann, 124 N.H. 101, 105-06 (1983); Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). We will affirm the trial court's finding of consent unless it is not supported by the record. Socci, 166 N.H. at 473.

To support her argument that her consent to search was not voluntary, the defendant cites the trial court's finding that she did not receive Miranda warnings before being interrogated and its ruling that she was in custody when she was asked to give consent. She acknowledges that a Miranda violation does not automatically require a finding that her consent to search was not voluntary. See, e.g., State v. Johnston, 150 N.H. 448, 456-57 (2004) (observing that Miranda addresses Fifth Amendment protection against compulsory self-incrimination rather than Fourth Amendment protection against unreasonable searches and seizures); Schneckloth, 412 U.S. at 241 ("Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures."). She contends, however, that a Miranda violation should create a presumption of coercion when we consider the voluntariness of consent to search just as it does in the context of custodial interrogations. Because, she argues, the procedure used by the police to obtain her consent in this case had a "potential for abuse," we should extend our previous holding barring the use of evidence obtained in violation of Miranda's safeguards to supply probable cause for search warrants, see State v. Gravel, 135 N.H. 172, 184 (1991), to find that it also creates a presumption of coercion in our analysis of whether a defendant's consent to search is voluntary.

Our test to determine whether consent was voluntary is based upon an examination of the totality of the circumstances. See Socci, 166 N.H. at 473. Given the scope of this test, we decline to hold that a Miranda violation results in a presumption of coercion when assessing the voluntariness of consent to search. See also United States v. Gonzalez-Garcia, 708 F.3d 682, 688 (5th Cir. 2013) (observing that to establish categorical rule that consent is coerced

whenever police use unwarned statement to obtain consent is inconsistent with multi-factor, holistic approach used to assess voluntariness).

In this case, the trial court concluded that the defendant's consent to search was voluntary based on the following findings: (1) Plummer reviewed the two consent forms with her and gave her time to read the forms on her own; (2) Plummer explained that her consent was voluntary and that she did not need to sign the forms; (3) Plummer told her that she could revoke her consent at any time; and (4) the defendant signed the forms, "indicating that she understood them." Each of these findings is supported by the record.

We are not persuaded by the defendant's argument that the same facts that supported the trial court's finding of custody also compel a finding of duress and coercion. See, e.g., State v. McKenna, 166 N.H. 671, 676-77 (2014) (discussing factors to be considered in custody determination). The defendant contends that the "aggressive investigation" coupled with the illegal interrogation resulted in a coerced rather than voluntary consent. The trial court's findings, however, do not support the defendant's characterization of the investigation. Rather, the court found that throughout the conversation in Plummer's vehicle, which lasted approximately fifteen minutes, Plummer's tone remained "casual." The court also found that the defendant was advised of her rights in relation to a consent search and then given time to consider whether to consent to the searches. These findings are supported by the record.

The defendant also argues that her purse was searched prior to the use of a written consent form, a factor "which contributes to the position that consent was not voluntary." Plummer testified that he asked the defendant whether she would "sign a consent-to-search form for the vehicle and her purse, which she agreed to do." Although the signed form referenced only the defendant's vehicle, the trial court credited Plummer's testimony that his original request for consent included the defendant's purse and that she orally agreed to both searches. Based upon our analysis of the totality of the circumstances, we conclude that the trial court did not err when it ruled that the State met its burden of proving, by a preponderance of the evidence, that the defendant freely, knowingly, and voluntarily gave consent to search her purse, vehicle, and home.

The defendant argues, however, that regardless of its voluntariness, "the taint of the Miranda violation cannot be purged from her oral consent to search [her] purse." And, she argues, because the search of her purse was involuntary, "this illegal initial search of the purse taints the subsequent two searches even though [she] signed a consent form for those searches." She contends that we should apply the test that we developed in Hight, to determine the validity of a consent to search that was preceded by a violation of Part I, Article 19 and of the Fourth Amendment, to this case to determine

5

whether any taint of the Miranda violation was purged.  State v. Hight, 146 N.H. 746, 749 (2001).  Although the State argues that this test does not apply, for the purposes of this appeal, we will do so.

Rather than adopting a per se rule that would suppress all evidence obtained from a consensual search following an unlawful detention, we adopted the following test in Hight: "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  Id. (quotation omitted).  We emphasized the distinction between factors to be considered when determining whether the taint of an unlawful detention followed by consent to search had been purged and those factors to be considered to determine whether a consent to search is voluntary.  We followed the United States Supreme Court's approach in Brown v. Illinois, 422 U.S. 590, 603-04 (1975), and applied the following factors to determine whether any taint had been purged: (1) "the temporal proximity between the police illegality and the consent to search"; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the official misconduct."  Hight, 146 N.H. at 750 (quotations omitted).

Here, the trial court found "absolute temporal proximity" between the unwarned custodial interrogation and the defendant's consent to search.  The State does not dispute this finding.  The court, however, also found that intervening circumstances were sufficient to purge the taint.  This included the time that Plummer took to review the consent-to-search forms with the defendant and his explanation that her consent was optional, and that if she signed the form, she could revoke her consent at any time.  We agree that Plummer's actions dissipated any taint by breaking any causal connection between the unwarned custodial interrogation and the defendant's consent.  See State v. Miller, 159 N.H. 125, 131 (2009); cf. State v. Barkus, 152 N.H. 701, 707 (2005) (holding that defendant's election to proceed with breath test after being informed of her right to refuse constituted intervening act between primary illegality and subsequent search).  The trial court also found that the conduct involved was not flagrant, noting that although it had found that the defendant was in custody at the time that she gave her consent, "the question was a relatively close one."  Cf. Miller, 159 N.H. at 133-34.  As we have previously observed, one of the reasons that we require the State to prove that any taint of an illegal action has been purged is to deter police misconduct.  State v. Szczerbiak, 148 N.H. 352, 357 (2002).  Given the trial court's finding that it was a "relatively close question" as to whether the defendant was in custody at the time that she gave her consent, it would not further the goal of deterrence to hold that her consent was tainted.  See id.  Therefore, we conclude that Plummer's actions purged any taint of the unwarned custodial interrogation.  Because the Federal Constitution provides no greater protection

6

than the State Constitution under these circumstances, we reach the same result under both constitutions. See State v. Livingston, 153 N.H. 399, 408 (2006); Schneckloth, 412 U.S. at 227; State v. McGurk, 157 N.H. 765, 772 (2008); Brown, 422 U.S. at 603-04.

The defendant next argues that the trial court erred when it denied her motion for JNOV following her conviction for possession of oxycodone. During their search of the defendant's home, the police recovered 197 tablets of 15 mg oxycodone and 140 tablets of 30 mg oxycodone; seven of the 30 mg tablets were in an unmarked bottle. Evidence was presented at trial that the defendant's daughter had a prescription for 15 mg oxycodone and that the defendant had filled her own prescription for 112 30 mg tablets five days before the search. Thus, at the time of the search, the defendant had in her possession more 30 mg oxycodone pills than she had been prescribed.

The defendant nevertheless contends that the lesser-included instruction given by the trial court on possession of a controlled substance violated her right to jury unanimity and her protection against double jeopardy. This is so, she argues, because the evidence admitted at trial established that she possessed oxycodone in two different strengths, and she presented separate explanations for her possession of each. We note at the outset that the appellate record contains neither a copy of the motion nor a transcript of the hearing held before the trial court on the motion. See, e.g., Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (burden on appealing party to provide court with record sufficient to decide issues on appeal).

However, this omission is not the only impediment to our review of the defendant's argument. As we have often explained, a specific, contemporaneous objection is necessary to preserve a challenge to a jury instruction for appellate review. State v. Nightingale, 160 N.H. 569, 577 (2010).

> This requirement affords the trial court an opportunity to correct an error it may have made and is particularly fitting when an alleged error involves a jury instruction. This long-standing requirement is grounded in common sense and judicial economy. To preserve a jury instruction issue for our review, counsel must do more than merely submit proposed instructions to the trial court, debate possible instructions with the trial court, or object generally to the admissibility of the evidence itself. To preserve a jury instruction issue for our review, counsel must actually make a specific objection to the court's jury instructions.

Id. (citations omitted).

7

Our review of the trial transcript reveals that although defense counsel objected to the State's request for a lesser-included offense instruction on the charge of possession with intent to sell, he did not argue that the instruction would violate either of the defendant's constitutional rights that he cites in his brief. Accordingly, these challenges have not been preserved for appellate review.

The State argues that, if we address this claim of error, we should do so only under our plain error rule. See, e.g., State v. Pinault, 168 N.H. 28, 33 (2015) (failure to raise claim of error in timely fashion does not preclude all appellate review but rather confines review to plain error). For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. Id. If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. at 33-34. The plain error rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result. Id.

Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court. State v. Rice, 169 N.H. 783, 790 (2017). We review the trial court's decisions on these matters for an unsustainable exercise of discretion. Id. To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of her case. Id.

The indictment charging the defendant with possession with intent to sell oxycodone stated that the defendant "knowingly possessed with intent to sell and/or dispense the scheduled II controlled drug oxycodone." At the close of the evidence, the trial court instructed the jury that, if it decided that the defendant was not guilty of the crime of possession with intent to sell a controlled drug, it should then consider whether she was guilty of possession of a controlled drug. The court instructed:

> The definition of possession of a controlled drug has three parts or elements. The State must prove all elements of the charge beyond a reasonable doubt. Thus, the State must prove that: 1. The defendant possessed a substance[; and] 2. The substance was the Schedule II Controlled Drug, Oxycodone; and 3. The defendant acted knowingly.

The words or phrases possess and knowingly have the same meaning here as in the definitions upon which I've previously instructed you.

As to this lesser possession of a controlled drug charge, it is an affirmative defense to prosecution of a possession of controlled drug offense if the person charged had a lawful prescription for the controlled drug in question. The defendant has the burden of proving this affirmative defense to you by a preponderance of the evidence. Proof by a preponderance of the evidence means that the evidence presented by the defendant in support of the affirmative defense has greater weight or is more credible or convincing than evidence to the contrary.

The trial court also instructed the jury:

Each of your verdicts must be unanimous. What this means is that all 12 jurors deliberating must agree on each of your verdicts. When you've arrived at all three of your verdicts, knock on the door, let your bailiff know and you will be returned to the courtroom where your foreperson will render or deliver your verdicts orally in response to questions that the Court will ask you.

Based upon the trial court's instructions, the defendant argues that there was a risk that some members of the jury might have believed that her daughter did not have a valid prescription and therefore concluded that the defendant illegally possessed only the 15 mg oxycodone, while other members might have concluded only that she did not have a valid prescription for the 30 mg oxycodone. This, she argues, would result in a violation of her right to a unanimous jury verdict.

However, as previously discussed, during the search of the defendant's home, the police recovered more pills than had allegedly been prescribed to her and her daughter. Given this evidence, the trial court's failure to give a unanimity instruction could not have affected the verdict. Moreover, as the State notes, we have not yet addressed the issue of whether jury unanimity is required in a case where the State has alleged one act of possession, but evidence presented at trial could support more than one act and different potential defenses might apply to each act. Given the record before us, if there was error, it was not plain. See Pinault, 168 N.H. at 33.

To the extent that the defendant alleges that allowing the jury to consider the lesser-included offense "fail[ed] to protect [her] against double jeopardy," she has not explained the basis for this assertion. Given her failure to develop

9

this argument, we decline to address it.  <u>See, e.g.</u>, <u>State v. Reinholz</u>, 169 N.H. 22, 31 (2016).

<u>Affirmed</u>.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred.