NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2022-0081

THE STATE OF NEW HAMPSHIRE

v.

LEEANN O'BRIEN

Argued: February 9, 2023
Opinion Issued: April 26, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, attorney, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief, and Pamela E. Phelan, public defender, of Concord, orally, for the defendant.

DONOVAN, J. The defendant, LeeAnn O'Brien, appeals her convictions, following a jury trial, of possession of a narcotic drug and control of a vehicle where a controlled drug was illegally kept. See RSA 318-B:2 (Supp. 2020); RSA 318-B:26, III(a) (Supp. 2022). On appeal, she argues that the Superior Court (Kissinger, J.) erred by denying her motion to suppress evidence seized pursuant to a search of her vehicle following a motor vehicle stop. We conclude that the officer unlawfully expanded the scope of the stop for a

defective license plate light by requesting the defendant's consent to search her vehicle for drugs. Accordingly, we reverse and remand.

## I.  Facts

The following facts are taken from the suppression hearing record and are undisputed, except as otherwise noted. On March 1, 2020, a Hooksett police officer patrolled an intersection adjacent to a gas station in Hooksett. The officer observed the defendant in the gas station parking lot inspecting the rear license plate on her vehicle. The officer waited for the defendant to pull onto the road, observed "that the [vehicle's] left plate light was out," and initiated a traffic stop. At the suppression hearing, the officer testified that the right side of the plate light was illuminated and, because his own headlights were on, he could read the defendant's license plate.

The officer approached the driver's side of the vehicle, and the defendant, the sole occupant, rolled down her window. The officer immediately "noticed a strong odor of marijuana coming from the [vehicle]." The officer informed the defendant that her plate light was out and asked for her license and registration. The defendant provided the same and explained that she knew her license plate light was out because somebody just told her about it at the gas station. The officer then informed the defendant about his observation of the odor of marijuana and asked if there was any marijuana in the vehicle. The defendant assured the officer that there was no marijuana in the vehicle, but she admitted to smoking some earlier that day. Because the defendant was from Massachusetts, the officer explained that, although marijuana is "legal there," it is "not legal here in New Hampshire." He then asked the defendant for her consent "to search the [vehicle] and everything inside of it" to confirm that there were "no other drugs or marijuana inside the [vehicle]." At the suppression hearing, the officer admitted that he "didn't have any suspicion about any other drugs," nor any reason to believe that "[the defendant] was driving under the influence."

The defendant consented to the search and exited the vehicle. During the search, the officer inspected a purse he found in the back seat of the vehicle, in which he found the defendant's social security card and two wrappers containing an orange pill split in half. The officer identified the pill as suboxone. He then spoke with the defendant who acknowledged that the purse belonged to her and informed the officer that the orange pill was her brother's suboxone. Based upon these facts, the officer arrested the defendant.

Thereafter, the defendant was charged and indicted for possession of a narcotic drug and control of a vehicle where a controlled drug was illegally kept. Through counsel, the defendant filed a motion to suppress the evidence obtained from the traffic stop. The defendant first argued that the officer did

2

not have a valid basis to stop her vehicle. Specifically, the defendant argued that the officer had no difficulty reading the license plate and he knew or should have known that the defendant was aware of the malfunctioning lightbulb. Therefore, in her view, "there was no lawful basis for the intrusion upon the privacy interests" of the defendant. The defendant further argued that she did not freely consent to the search of her vehicle. The defendant maintained that the odor of marijuana was the sole basis for the officer's request for consent to search the vehicle and alleged that the officer threatened to impound her vehicle if she did not consent. Based upon these facts, the defendant argued that she was compelled to consent to the search.

The trial court denied the defendant's motion. The court found that the officer had a reasonable suspicion to initiate the traffic stop because the defendant was driving with a malfunctioning license plate light, "which is a violation of RSA 266:44." The court further opined that "[t]he fact that [the officer] could read the license plate [did] not render her defective light beyond the scope of RSA 266:44." As to the defendant's second argument, the court, citing State v. Perez, 173 N.H. 251 (2020), ruled that "the scent of the marijuana emanating from the [vehicle] was sufficient for [the officer] to ask for permission to search the [vehicle]." The court also found that the defendant's allegation that the officer threatened to impound the vehicle was "not consistent with the testimony provided to the [c]ourt at the hearing." Accordingly, the trial court found that the defendant's "consent was freely given." A jury subsequently found the defendant guilty on charges of possession of a narcotic drug and control of a vehicle where a controlled drug was illegally kept. This appeal followed.

## II. Analysis

On appeal, the defendant argues that the trial court's failure to suppress all evidence obtained from the search of her vehicle violated her state and federal constitutional rights to be free from unreasonable searches and seizures. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends IV, XIV. More specifically, the defendant first argues that the officer's observation of the defective license plate light did not provide a lawful basis for the motor vehicle stop. She also argues that the officer unreasonably expanded the scope of the stop and her consent to the search of her vehicle was tainted by her illegal detention. We first address the defendant's claims under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). When reviewing a trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. Perez, 173 N.H. at 256. We review, de novo, the trial court's legal conclusions. Id.

Because we find the issue to be dispositive of this appeal, we address only the defendant's argument that the officer unlawfully expanded the scope

of the traffic stop.  Part I, Article 19 of the New Hampshire Constitution protects all people, their papers, their possessions and their homes from unreasonable searches and seizures.  Warrantless seizures are per se unreasonable under Part I, Article 19 unless the State proves by a preponderance of the evidence that the seizure falls within the narrow confines of a judicially crafted exception.  Perez, 173 N.H. at 257.  One such exception allows law enforcement to conduct traffic stops of motorists without a warrant.  Id.

A traffic stop is a seizure for purposes of the State Constitution.  State v. Sage, 170 N.H. 605, 610 (2018).  To undertake such a stop that complies with the State Constitution, the officer must have a reasonable suspicion, based upon specific, articulable facts taken together with rational inferences drawn from those facts, that the particular person stopped has been, is, or is about to be engaged in criminal activity.  State v. Monegro-Diaz, 175 N.H. 238, 242 (2022).  A reasonable suspicion "must be more than a mere hunch."  Id.  The scope of such an investigative stop must be carefully tailored to its underlying justification, must be temporary, and last no longer than is necessary to effectuate the purpose of the stop.  Sage, 170 N.H. at 610.

The scope of a stop may be expanded to investigate other suspected illegal activity "only if the officer has a reasonable and articulable suspicion that other criminal activity is afoot."  Id. (quotation omitted).  An investigatory stop may "metamorphose into an overly prolonged or intrusive detention and, thus, become unlawful."  Perez, 173 N.H. at 257 (quotation omitted).  Whether the detention is a lawful investigatory stop, or goes beyond the limits of such a stop, depends upon the facts and circumstances of the particular case.  Id.  To determine whether an officer's inquiry unlawfully expanded the scope of an otherwise valid traffic stop, we undertake the following analysis:

If the question is reasonably related to the purpose of the stop, no constitutional violation occurs.  If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question.  If the question is so justified, no constitutional violation occurs.  In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.

The defendant argues that "the only evidence supporting [the officer's] inquiry into drug possession was the smell of burnt marijuana."  Relying upon our holding in Perez, the defendant maintains that the officer "did not have reasonable and articulable suspicion of a drug crime [necessary] to expand the

scope of the motor vehicle stop." In turn, the defendant contends that the unjustified inquiry into the possession of drugs unlawfully prolonged the detention and changed the fundamental nature of the stop. As a result, the defendant argues that the trial court erred in denying her motion to suppress because the defendant's consent to search her vehicle was tainted by an illegal detention and expansion of the stop.

As an initial matter, the State contends that the defendant's argument that the officer unlawfully expanded the scope of the stop is not preserved for our review. Specifically, the State argues that on appeal the defendant abandons her argument before the trial court that her consent was not freely given and instead argues "for the first time" that the officer expanded the scope of the stop, thereby unconstitutionally tainting the consent the officer received to search the vehicle. We are unpersuaded by the State's argument. "We have often explained that the purpose of our preservation rule is to ensure that trial courts have an opportunity to rule on issues and to correct errors before parties seek appellate review." Perez, 173 N.H. at 258. "With these principles in mind, we have held that an issue is preserved when the trial court understood and therefore addressed the substance of an objection." Id.

Here, in her motion to suppress, the defendant argued that the officer relied solely upon the odor of marijuana and did not observe any indications of impairment prior to asking for consent to search the vehicle. The trial court considered the defendant's argument, but ultimately disagreed with her, citing Perez and ruling that "the scent of the marijuana emanating from the [vehicle] was sufficient for [the officer] to ask for permission to search the [vehicle]." Therefore, the trial court considered whether the odor of marijuana, in and of itself, justified the officer's expansion of the scope of the traffic stop when he asked the defendant for her consent to search the vehicle for marijuana and other drugs, and, applying our holding in Perez, concluded that it did. Accordingly, we conclude that the defendant's argument is preserved for our review.

Turning to the merits, the parties focus our attention on the manner in which the trial court applied our holding in Perez. In that case, we addressed how the decriminalization of marijuana and legalization of medical marijuana affected our "standard for reasonable, articulable suspicion" of criminal activity within the context of a traffic stop. Perez, 173 N.H. at 259-62. We noted that prior to decriminalization, "the odor of marijuana had been a relevant and noteworthy factor among those considered by this court when reviewing whether law enforcement had reasonable, articulable suspicion of criminal activity." Id. at 260 (collecting cases). However, the legislature had since amended the Controlled Drug Act, "making possession of three quarters of an ounce or less of marijuana a violation-level, rather than a criminal, offense in

5

certain circumstances."[1] Id. at 259; see also RSA 318-B:2-c, II, V (Supp. 2022); RSA 625:9, II(b) (2016) ("A violation does not constitute a crime . . . ."). Therefore, we recognized that "the odor of marijuana may indicate both criminal and non-criminal activity." Perez, 173 N.H. at 260.

In light of these significant "changes in the law," we rejected the State's argument that "the detected odor of marijuana alone supports, per se, a reasonable, articulable suspicion 'that a person possesses an illegal quantity of marijuana.'" Id. at 259, 262. We likewise rejected the defendant's argument in support of a per se rule that the odor of marijuana was only "indicative of innocent behavior." Id. at 262. Instead, we adopted a case-by-case approach in which the odor of marijuana "remains a relevant factor" to be considered among the totality of the circumstances in determining whether reasonable, articulable suspicion of criminal activity exists. Id. at 261. We then held that the officer's detection of the odor of marijuana, combined with other factors, including the defendant's failure to immediately pull over, the nervous and odd behavior of the passengers, multiple cell phones observed in the defendant's rented vehicle, and the defendant's criminal record, created "a reasonable, articulable suspicion of drug activity." Id. at 262-63. In light of these multiple factors, we concluded that no constitutional violation occurred when the officer expanded the scope of the traffic stop by issuing an exit order to search the defendant's vehicle. Id. at 263.

Here, to determine whether the officer lawfully expanded the scope of the traffic stop by asking for consent to search the defendant's vehicle, we must "analyz[e] the totality of circumstances supporting a reasonable, articulable suspicion of criminal activity." Perez, 173 N.H. 262. At the suppression hearing, the officer repeatedly stated that "the odor of marijuana coming out of the [vehicle]," which he believed provided a "reasonable suspicion that there might be more marijuana," prompted his inquiry into drugs and supported his request to search the vehicle. The officer expressly ruled out any suspicion of impaired driving or "about any other drugs," and he provided no indication that anything about his interaction with the defendant increased his suspicion of illegal activity.

We interpret the trial court's order as applying a per se rule that the odor of marijuana provided a reasonable, articulable suspicion of criminal activity for the officer to expand the scope of the stop to ask for permission to search the defendant's vehicle. State v. Kay, 162 N.H. 237, 242 (2011) ("Our interpretation of a trial court order is a question of law, which we review de novo."). In doing so, the trial court erred. See Perez, 173 N.H. at 263 ("If the trial court had applied a per se rule to the detected odor of marijuana, that

---

[1] Because a violation-level offense is not a crime, see RSA 625:9, II(b) (2016), we reject the State's argument that the officer's "authority to issue a citation for possession of any amount of marijuana" supported expanding the scope of the traffic stop.

would be error."). The court did not apply "determinative weight" to one of a number of factors, but, rather, the court considered only one factor to support its conclusion that the officer was justified in expanding the scope of the stop. See State v. Carrier, 173 N.H. 189, 208 (2020) (explaining that the trial court was permitted to accord determinative weight to one factor when considering multiple factors in its totality of the circumstances analysis). Consequently, the trial court's ruling in this case that, without additional evidence, "the scent of the marijuana emanating from the [vehicle] was sufficient for [the officer] to ask permission to search [the vehicle]," is inconsistent with our holding in Perez rejecting a per se rule regarding the detection of an odor of marijuana. See Perez, 173 N.H. at 263.

Indeed, in her responses to the officer's inquiry into the odor of marijuana, the defendant denied that any marijuana was in the vehicle, explained that she had smoked marijuana earlier that day, and the officer acknowledged that the defendant resided in Massachusetts where possession of marijuana is legal. Therefore, the defendant's innocent responses to the officer's inquiry, her demeanor, and the lack of any other evidence suggesting criminal activity should have dispelled an officer's objective initial suspicion of illegal drug activity or of possession of more than three-quarters of an ounce of marijuana. See RSA 318-B:2-c, II, V. On this record, based upon the totality of the circumstances, we conclude that the officer lacked reasonable suspicion of criminal activity. More specifically, the officer's detection of an odor of marijuana, standing alone, was insufficient to justify his expansion of the traffic stop to ask for consent to search the defendant's vehicle. See Perez, 173 N.H. at 262.

The State argues that Perez is distinguishable because, in that case, we addressed only "whether the officer's exit order impermissibly expanded the scope of the stop," as opposed to "a mere inquiry into the odor of burnt marijuana." According to the State, "this case is one of first impression" and Perez "is not controlling" because here we are tasked with analyzing whether the officer's "mere inquiry" into the odor of marijuana unlawfully expanded the scope of the stop. The State's argument is unavailing. The officer did not limit the scope of the traffic stop to a "mere inquiry" into the odor of marijuana. Had he done so, his encounter with the defendant would have concluded with a warning or a citation for a motor vehicle violation.

Rather, as previously detailed, the defendant's responses to the officer's initial inquiry should have dispelled his suspicions of illegal drug activity. Nonetheless, the officer subsequently requested consent to search the defendant's vehicle on the sole basis that he had observed an odor of marijuana. Even if the officer's inquiry into the odor of marijuana was permissible, the officer did not have a reasonable, articulable suspicion of illegal drug activity, based solely on the odor of marijuana, to thereafter justify asking for consent to search the defendant's vehicle for marijuana or other

drugs.  Instead, the officer's continued detention of the defendant when he asked for her consent to search her vehicle for drugs altered the fundamental nature of the traffic stop and thus was unlawful.[2]  See State v. Morrill, 169 N.H. 709, 722 (2017) (Hicks, J., concurring) ("An investigation into the possession of contraband is fundamentally different from an investigation of traffic violations.").

Because the continued detention was unlawful, typically we would next consider whether the illegality of that detention tainted the defendant's consent to search the vehicle.  "The fruit of the poisonous tree doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution."  Morrill, 169 N.H. at 717 (quotation omitted).  We have held that when consent is the product of an unlawful detention during a motor vehicle stop, such consent is "tainted by the illegality of the detention"; however, we have not adopted a per se rule requiring suppression.  State v. Hight, 146 N.H. 746, 749 (2001) (quotation omitted).  "Rather, the question to be resolved is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."  Morrill, 169 N.H. at 717 (quotation and ellipsis omitted).  The State bears the burden to "demonstrate that any taint of an illegal search or seizure has been purged or attenuated."  Hight, 146 N.H. at 749.  However, we need not address this issue because the State does not argue — let alone meet its burden — that the taint of any illegal detention was purged.

### III.  Conclusion

We conclude that the trial court erred in denying the defendant's motion to suppress.  We therefore reverse and remand.  Because the defendant prevails under the State Constitution, we need not address her federal claim.  See Ball, 124 N.H. at 237.

Reversed and remanded.

HICKS and BASSETT, JJ., concurred; MACDONALD, C.J., and HANTZ MARCONI, J., dissented.

MACDONALD , C.J., and HANTZ MARCONI, J., dissenting.  Because we disagree with the majority that the officer lacked a reasonable, articulable suspicion of criminal activity, we respectfully dissent.

---

[2] Because we conclude that Perez is controlling, we decline to address the State's arguments applying case law from other jurisdictions.  Moreover, given our conclusion that the officer's request for consent to search the vehicle altered the fundamental nature of the stop, we need not consider whether it impermissibly prolonged the detention.  See Perez, 173 N.H. at 257.

The instant case is distinguishable from State v. Perez. In Perez, a New Hampshire State Police trooper pulled over the defendant's car after observing him twice fail to properly signal when changing lanes. State v. Perez, 173 N.H. 251, 254 (2020). Several factors led the trooper to form a reasonable, articulable suspicion of criminal activity, one of which was "an odor of marijuana emanating from the vehicle." Id. at 255. However, the trooper noticed the odor of marijuana well after initiating the traffic stop: after he asked for and received the defendant's driver's license and registration, discussed the rental car with the defendant, asked for and received the rental agreement, and matched the information on the agreement to the defendant's driver's license. See id. at 254. When testifying, the trooper could not recall whether the odor smelled of fresh or burnt marijuana. Id. at 255. The trooper asked the defendant if he would exit the vehicle and speak with him at the rear of the car. Id. After receiving consent to search the vehicle, the trooper found two plastic bags containing drugs in the car. Id. at 255-56. The defendant moved to suppress all evidence obtained as a result of the traffic stop. Id. at 256. The trial court denied his motion after an evidentiary hearing, finding that the trooper had lawfully expanded the scope of the stop. Id.

On appeal, the defendant argued that "after the decriminalization of small quantities of marijuana in New Hampshire, see RSA 318-B:2-c, II (Supp. 2019), the odor of marijuana emanating from a vehicle cannot provide reasonable, articulable suspicion to expand a traffic stop without additional evidence." Id. at 258. Because "under New Hampshire law, the odor of marijuana may indicate both criminal and non-criminal activity," we held that "the odor of marijuana remains a relevant factor that can be considered in determining whether reasonable, articulable suspicion of criminal activity exists." Id. at 260, 261. However, we disagreed with the State that "the detected odor of marijuana alone supports, per se, a reasonable, articulable suspicion 'that a person possesses an illegal quantity of marijuana.'" Id. at 262. Based on the many observations made by the trooper during the stop, we affirmed the trial court's denial of the motion to suppress. See id. at 262-63.

Here, the particular details regarding the odor of marijuana are distinct from those in Perez. The officer testified that "[r]ight away [he] noticed a strong odor of marijuana coming from the car." He further specified that he smelled marijuana "immediately" "when she rolled down the window" and that "[i]t smelled like freshly burned marijuana." Thus, the strength and nature of the odor suggested that either there was freshly burnt marijuana in the car or the defendant had recently smoked marijuana before operating it. Under these circumstances, this particular odor was the catalyst for the officer's suspicion as soon as the stop began, rather than a general observation made well into the traffic stop, as in Perez.

The officer testified that when asked whether there was any marijuana in the car, the defendant responded that there was none but that "she had

9

smoked earlier in the day." The majority asserts that "the defendant's innocent responses to the officer's inquiry, her demeanor, and the lack of any other evidence suggesting criminal activity should have dispelled an officer's objective initial suspicion of illegal drug activity or of possession of more than three quarters of an ounce of marijuana." However, her responses did not explain why the odor of freshly burnt marijuana was emanating from the car. Based on the totality of the circumstances, which included this inconsistency and the fact that the defendant was the sole person in the car, the officer had a reasonable, articulable suspicion that there was freshly burnt marijuana in the vehicle. See id. at 262 (reasoning that "[a]lthough any one factor in the totality of circumstances may seem innocent or innocuous in isolation, we consider the [officer's] observations together and in light of the reasonable inferences that an officer who is experienced in detecting and investigating drug trafficking may draw").

Because here, there was more than a mere odor of marijuana, under the totality of the circumstances test, we would affirm the trial court's order denying the defendant's motion to suppress. Accordingly, we respectfully dissent.